**CONTINENTAL OIL COMPANY,**
Appellant,

v.

**OKLAHOMA STATE BOARD OF
EQUALIZATION and Oklahoma
Tax Commission, Appellees.**

No. 46798.

Supreme Court of Oklahoma.

Feb. 24, 1976.

Rehearing Denied Oct. 26, 1977.

John B. Wimbish, Houston, Tex., Hal D. Leaming, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen. of Okl., Paul C. Duncan, Asst. Atty. Gen. of Oklahoma, Oklahoma City, for appellees.

IRWIN, Justice:

Continental Oil Company (Conoco) appeals from an order of the State Board of Equalization (Board) denying it tax relief to which Conoco contends it is entitled under 68 O.S. 1971, § 1001(h).

Oklahoma levies a tax equal to seven percent (7%) of the gross value of the production of oil and gas within the state. 68 O.S. 1971, § 1001(a). Conoco sought relief under § 1001(h) which provides in part:

"The State Board of Equalization, upon its own initiative, may, and upon complaint of any person who claims that he is taxed too great a rate hereunder, shall, take testimony to determine whether the taxes herein levied are greater, or less, than the general ad valorem tax for all purposes would be on the property of such producer subject to taxation in the district or districts where the same is situated * * *. The said board shall have power and it shall be its duty to raise or lower the rates herein levied to conform thereto. * * *."

In 1971 Conoco paid the 7% gross production tax under protest and filed a complaint with Board. Conoco requested Board to take testimony to determine if the 7% gross production tax was greater than the general ad valorem tax for all purposes would be under § 1001(h), and, if greater, to lower the rates accordingly. After some delay [see *Continental Oil Company v. State Board of Equalization*, Okl., 494 P.2d 645 (1972)] a hearing was conducted before the Honorable Robert E. L. Richardson, trial examiner. Extensive testimonial and documentary evidence was introduced and a transcript of the proceedings was reviewed by Board. Board entered its findings of fact and conclusions of law and denied Conoco any relief. Conoco appealed.

Board first determined that the provisions of 68 O.S. 1971, § 1001(h) are unconstitutional as a matter of law. Having made this determination, Board apparently was of the view it was unnecessary to consider or adjudicate the basic issue presented, i. e., whether the 7% gross production tax was "greater, or less, than the general ad valorem tax for all purposes would be" under § 1001(h). However, to avoid any question as to proper form of judgment, Board did issue its findings of fact and conclusion of law concerning specific aspects of the proceedings. Before discussing the findings and conclusions, we will first consider Board's contentions concerning the constitutionality of § 1001(h).

Board contends § 1001(h) is an unconstitutional delegation of legislative power be-

cause it authorizes Board to raise or lower the 7% gross production tax rate prescribed by the Legislature.

The Legislative proviso that Board "shall have power and it shall be its duty to raise or lower the rates herein levied", when considered in conjunction with the entire enactment, merely provides a vehicle for Board to make a tax adjustment after it has determined an adjustment should be made. Board, in effect, determines what the general ad valorem tax for all purposes would be within the guidelines prescribed by the Legislature, and then adjusts the rate of tax to conform thereto.

■ The power to determine the policy of the law is primarily legislative and cannot be delegated, but if a legislative enactment prescribes the policy of the Legislature and establishes a standard or guideline for administrative action, the delegation is proper. *State v. Parham*, Okl., 412 P.2d 142 (1966).

■ The Legislature has established the standards and guidelines for Board's actions and Board must perform its duties pursuant to those standards and guidelines. Sec. 1001(h) is not an unconstitutional delegation of legislative power to Board to fix tax rates.

Board also contends § 1001(h) is unconstitutional because its practical application is so difficult as to make it unconstitutionally speculative.

The record in this case emphasizes the speculative nature of some of the evidence that Board would have had to consider and the difficulty in obtaining necessary information and evidence. In *Meriwether v. Lovett*, 166 Okl. 73, 26 P.2d 200 (1933), we observed that some of these considerations were part of the persuasive concerns which motivated the Legislature to adopt the gross production tax legislation in the first instance.

■ In the case at bar, Conoco initiated the proceedings and the burden was upon it to provide Board with sufficient information and evidence to determine whether Conoco was entitled to a tax adjustment. If Conoco did not present evidence that was adequate for Board to determine values with reasonable accuracy, Conoco did not prove its case, and Board should have denied Conoco relief on these grounds. See *Continental Oil Company* [494 P.2d 645] supra.

■ The speculative nature of evidence submitted in proceedings initiated under § 1001(h), supra, goes to the sufficiency of the evidence and not to the constitutionality of the enactment. We hold the difficulty in applying the provisions of § 1001(h) does not render it unconstitutional.

In order to determine Conoco's ad valorem tax liability as prescribed by § 1001(h) as assessed valuation must be placed on Conoco's taxable property. The manner for determining this assessed valuation is the crux of this litigation. Board found that it "presently has set assessment ratios for railroads and public service companies, including pipeline companies, at 35% of fair cash value", and that "oil companies should be placed in the same category." Board concluded that "all hydrocarbon reserves * * * are to be assessed for ad valorem tax purposes at 35%; and it [Board] should assess Conoco in the same manner as it assesses railroads and public service corporations in order to prevent discrimination and insure uniform assessments."

We note that Art. 10, § 8, of the Oklahoma Constitution prohibits the assessment of real property and tangible personal property at more than thirty-five percent (35%) of its fair cash value estimated at the price it would bring at a fair voluntary sale.

Conoco contends that § 1001(h) plainly requires Board to determine what the ad valorem tax assessment on its properties would be if those properties were subject to ad valorem taxation in the separate counties and taxing districts where physically located and to adjust the gross production tax rate accordingly. Conoco states that it "should be evident that if its properties were subject to ad valorem taxes they would be assessed by the various county assessors as required by law. The Board's

duty or authority to make an assumption and determine what ad valorem taxes, which would be assessed by others, would be in order to make a required comparison is a far cry from a grant of authority to the Board to make an assessment of property which is, for assessment purposes, beyond its jurisdiction." Conoco argues that the 35% assessment ratio may not be employed under the clear mandate of § 1001(h), but that the assessment ratio for each county as published by the Oklahoma Tax Commission must be used.

The divergent views are summarized. Board, in support of its order, contends that it·may assess all of Conoco's taxable property at 35% of its fair cash value regardless of its geographical location. Conoco contends that the assessment for each county must be in harmony with the assessment ratio of that county; i. e., if the assessment ratio of X county, as published by the Oklahoma Tax Commission, is 15% of its fair cash value, the assessed valuation of Conoco's taxable property in X county must be 15% of its fair cash value. Conoco also contends that its properties should be assessed by the various county assessors and not by Board.

■ Article 10, § 22, of the Constitution authorizes the Legislature to classify property for purposes of taxation; and the valuation of different classes by different means or methods. The Legislature has a wide range of discretion in classifying subjects of taxation, and to justify judicial interference, the classification must be based on an unreasonable or arbitrary classification. *Peterson v. Oklahoma Tax Commission*, Okl., 395 P.2d 388 (1964).

By enactment of the Gross Production Tax Act [68 O.S. 1971, §§ 1001–1022] the Legislature imposed a special tax in lieu of and as a substitute for the general ad valorem tax on the oil and gas and the property of the producer used in the production thereof, and the tax was levied in the exercise of the Legislature's constitutional power to select property for the purposes of taxation, and to value and classify such property by means and methods differing from that commonly employed in the as-

sessment, levy, and collection of taxes by counties, and other municipal authorities. See *Apache Gas Products Corp. v. Oklahoma Tax Commission*, Okl., 509 P.2d 109 (1973).

■ In the *Apache* case we held that the gross production tax was levied on the occupation or business of producing the commodities therein designated, and was in lieu of a property tax. Although § 1001(h) authorizes a taxpayer to have the 7% tax rate measured against what "the general ad valorem tax for all purposes would be" the ultimate tax paid constitutes a gross production tax. The type of the tax, i. e., a gross production tax, does not lose its identity as such because a taxpayer may be entitled to some tax relief under § 1001(h).

Art. 10, § 21, of the Oklahoma Constitution provides that the duty of the State Board of Equalization "shall be to adjust and equalize the valuation of real and personal property of the several counties in the State, and it shall perform such other duties as may be prescribed by law, and they shall assess all railroad and public service corporation property." Under this section, the Legislature may impose certain duties upon Board. By enactment of § 1001(h), the Legislature required Board, upon a complaint being filed, to take testimony and to determine whether the 7% tax levy was greater, or less, than the general ad valorem tax for all purposes would be, and to adjust the 7% tax rate to conform thereto.

■ Board can not determine whether the 7% tax levy is greater, or less, than the general ad valorem tax for all purposes would be, nor can it adjust the tax rate to conform thereto, until the property has been assessed. There is no language in § 1001(h) that could be construed to mean that the various county assessors throughout the State should determine the assessment of property physically located within the various counties. Although the county assessors might lend their assistance to Board in the assessment, the ultimate responsibility is upon Board. Our decision in *Continental Oil Company*, supra, clearly dis-

closes that Board, and not the various county assessors, determine assessment values under § 1001(h).

In *In re Assessment of Property of Western Light & Power Corp.*, 169 Okl. 53, 35 P.2d 946 (1934), it was contended that the valuation placed on a public service corporation's property by the State Board of Equalization was a greater percentage of its actual value than the percentage of actual value placed on other property in the State for taxation purposes by the taxing officials of the state and that the plan was systematically and intentionally followed. In sustaining Board's assessment we held that Art. 10, § 22, of the Oklahoma Constitution authorizes the classification of property for the purpose of taxation and the valuation of different classes by different means or methods; and it is not necessary that the property of public service corporations be valued at the same percentage of value as that placed on other classes of property. See also, *Pure Oil Pipe Line Co. v. Cornish*, 163 Okl. 79, 20 P.2d 1041 (1933).

In *In re Diehr*, 174 Okl. 300, 50 P.2d 725 (1935), we held that "money, as defined in chapter 72, Sess.Laws 1927 (sections 12339 to 12344, inclusive, O.S.1931), is a proper subject of classification for purposes of taxation under section 22, article 10, of the State Constitution." Therein we said:

"Money is a distinct species or character of property and may well be the proper subject of classification. When the money is classified, the Legislature is then apparently unlimited as to the means and methods it may employ in arriving at the valuation thereof for purposes of taxation. The tax levied thereon need only be uniform upon all property properly classified as money."

█ Art. 10, § 5, of the Constitution, provides that taxes shall be uniform upon the same class of subjects. This uniformity proviso relates to the rate of taxation. The amount of the assessed valuation comes within the purview of Art. 10, § 8, supra. *Blake v. Young*, 128 Okl. 153, 261 P. 923 (1927); and *Board of County Commissioners of Canadian County v. State Board of Equalization*, Okl., 363 P.2d 242 (1961).

The Legislature, in the first instance, levied a 7% gross production tax, and then authorized an alternative method for determining the rate. The Constitution authorizes the classification of property for the purpose of taxation and if a taxpayer should elect to have the tax rate determined under § 1001(h), it is not necessary that the same percentage of value be placed on his property as that placed on other classes of property. The assessment ratios of the various counties have no relation to assessments made under § 1001(h). We cannot sustain Conoco's contention that the assessment ratio of its properties in the various counties must be in harmony with or may not exceed the assessment ratios of the various counties as published by the Oklahoma Tax Commission.

█ We hold that when a taxpayer files a complaint with Board pursuant to § 1001(h), supra, it is the sole responsibility of Board to determine the assessed valuation, to set the assessment ratio for that class of property and to apply it uniformly throughout the state. We further hold that any and all properties, including hydrocarbon reserves, that must be assessed in compliance with § 1001(h), may be constitutionally assessed at not more than thirty-five percent (35%) of its fair cash value estimated at a price it would bring at a fair voluntary sale.

█ Since Board failed to adjudicate the basic issue presented, i. e., whether the 7% gross production tax was "greater, or less, than the general ad valorem taxes for all purposes would be", the cause is remanded for further proceedings.

Reversed and remanded.

All the Justices concur.