DEMOCRATIC PARTY OF OKLAHO-
MA; et al., Petitioners,

v.

Reverend Wendell R. ESTEP et
al., Respondents,

v.

REPUBLICAN STATE COMMITTEE,
et al., Intervenors.

No. 54538.

Supreme Court of Oklahoma.

Sept. 28, 1982.

As Corrected Sept. 30, 1982.

Carl Hughes, Hughes, Nelson, Blessington & Holden, Oklahoma City, for petitioners.

Jan Eric Cartwright, Atty. Gen., Barry Albert, First Asst. Atty. Gen., Oklahoma City, for respondents.

Stephen Jones, Gen. Counsel, Republican State Committee, J. Craig Dodd, Atty. for Republican State Committee, Jones & Gungoll, Oklahoma City, for intervenors.

OPALA, Justice:

This original proceeding tenders for judicial testing the constitutional validity of the Oklahoma Campaign Finance Act [Act].[1] Important first-impression questions are presented as to the legality of public subsidy for campaign-related activities of candidates and their parties. The issue for decision is whether it is constitutionally permissible to use public funds in payment for campaign-related expenses of candidates for public office and of political parties. We find the controversy over this issue lacks justiciability because the Act is devoid of an articulate pronouncement of legislative policy that embodies standards or guidelines capable of administrative implementation.

Petitioners [Democratic Party of Oklahoma and certain of its officials and members] bring this proceeding to compel respondents' performance of their statutory duties under the Act and to declare ineffective an Attorney's General opinion which invalidates vital portions of the Act. The respondents are members of the Campaign Commission [Commission] created by the Act

---

1. 26 O.S. 1981 §§ 18–101 et seq.

and certain other state officials who stand charged with various duties to be performed under its terms. The Republican State Committee of Oklahoma was allowed to intervene in the case.

The controversy before us had its genesis in an Attorney's General opinion by which funding provisions of the Act were found to be violative of our fundamental law that prohibits gifts of public funds to private entities for a nonpublic purpose.[2]

In this opinion we (1) outline the salient terms of the Act, (2) evaluate the petitioners' legal standing to raise issues sought to be litigated, (3) comment on the Attorney's General opinion and issues dealt with in it and (4) conclude that absent an articulately declared legislative policy with standards or guidelines that can be implemented lawfully by an administrative agency, the case presents no justiciable issues for our review of the Act's constitutionality.

## I.

### THE OKLAHOMA CAMPAIGN FINANCE ACT

The Act, passed by the 1979 legislature, has as its ultimate objective the distribution of public money to (a) the nominees of recognized political parties and to independent candidates for eight statewide offices and to (b) the recognized political parties in the State. Pertinent provisions of the Act are:

1. A campaign finance fund is to be created from funds collected by the Oklahoma Tax Commission. Any person whose state income tax liability for any taxable year is one dollar or more may designate one dollar of his total liability for transfer to the fund.[3]

2. A Campaign Commission is to be created and given power to enact all necessary rules for implementation of the Act. The Commission is given authority to define those campaign expenses for which the fund may be used and to provide for proper accounting procedures.[4] Any person expending public money from the fund in violation of Commission rules may be prosecuted for the commission of a felony.[5]

3. The Act provides for (1) certification by the State Treasurer[6] of funds that are available under the Act and (2) for like certification by the Secretary of the State Election Board of political parties and candidates eligible for receipt of these funds.[7]

4. The Act also provides for the allocation, distribution and expenditure of the fund. Fifty percent of the fund is to be allocated to eligible public office candidates[8] and fifty percent to eligible political parties.[9]

---

2. Attorney's General Opinion No. 79–195.

3. 26 O.S. 1981 § 18–103. In the case of a joint return, a husband and wife can designate for the fund two dollars of their total tax liability. All funds collected are to be deposited in a separate account with the State Treasurer. Money may be expended from the fund on warrants drawn by the State Budget Officer by proper vouchers executed by the designee of the Commission. 26 O.S. 1981 § 18–104.

4. 26 O.S. 1981 § 18–105.

5. The decision to prosecute for violation of the Act rests with the district attorney. 26 O.S. 1981 § 18–113(A)(1).

6. 26 O.S. 1981 § 18–106(A).

7. 26 O.S. 1981 § 18–106(B) and (C). Political parties and candidates receiving money from the fund must file a detailed report on the expenditure of such funds. Any political party

"misusing" such funds loses its eligibility to receive money from the fund for ten years. 26 O.S. 1981 § 18–113(A)(2).

8. 26 O.S. 1981 § 18–107. "Candidates" are defined as the "nominees of the recognized political parties and independent candidates for the offices of Governor, Lieutenant Governor, Attorney General, State Treasurer, State Auditor and Inspector, Commissioner of Insurance, Superintendent of Public Instruction and Corporation Commissioner." 26 O.S. 1981 § 18–102(2).

9. 26 O.S. 1981 § 18–107. "Political parties" are defined as "those parties recognized under the laws of the State of Oklahoma." 26 O.S. 1981 § 18–102(1). The fund is to be distributed every even-numbered year. Funds designated for eligible political candidates, but not distributed to them, are to be immediately transferred to eligible political parties. 26 O.S. 1981 § 18–107. A candidate's eligibility to receive

5. Funds to be allocated to political parties are to be distributed in the following manner: each eligible political party is to receive ten percent of the funds to be allocated to political parties and the balance of the funds is to be distributed to the recognized political parties in accordance with the ratio that the registered voters affiliated with that party bear to the total number of registered electors in the State.[10]

6. Funds designated for candidates whose names appear on the general election ballot are to be distributed as follows: (a) Governor—twenty percent, (b) Lieutenant Governor—fifteen percent, (c) Treasurer— ten percent, (d) Auditor and Inspector—ten percent, (e) Commissioner of Insurance— ten percent, (f) Superintendent of Public Instruction—ten percent and (g) Corporation Commissioner—ten percent.[11]

## II.

### STANDING TO CHALLENGE ATTORNEY'S GENERAL OPINION

The Attorney's General opinion broadly condemns as unconstitutional all the funding provisions of the Act. The petitioners seek to have the entire opinion declared invalid.

■ In this proceeding to challenge the validity of an attorney's general opinion, we are called upon to declare the rights of the Democratic Party in the provisions of the Act that benefit it. Standing to raise issues in a proceeding such as this which is essentially a declaratory judgment action[12] must—as in other litigation—be predicated on interest that is "direct, immediate and substantial".[13] Standing focuses on the party seeking to get his complaint before the court and not on the issues tendered for determination. In standing problems, the inquiry posed is whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the tendered controversy.[14] One who is not "aggrieved" by a decision—however erroneous—may not bring a challenge to its validity.[15]

■ The Act designates two classes of beneficiaries for the governmental largesse to be dispensed—political parties and certain public office candidates. The Democratic Party, who is doubtless adversely affected by the challenged opinion, is properly before us. Inasmuch as none of the petitioners named in the caption hereof can qualify as a "political candidate", the claims of that class are not here subject to judicial vindication. The issues sought to be raised must hence be confined to those which affect the interest of the Democratic Party alone. The legal hurdle sought to be removed by that party's suit cannot be overcome without judicial intervention. Public officials act at their peril when their action is in contravention of an opinion by the

funds depends on a showing to the Commission that he has received private contributions, exclusive of his own funds, which equal the amount for which he has applied. 26 O.S. 1981 § 18–109. No similar requirement applies to political parties.

10. 26 O.S. 1981 § 18–110.

11. 26 O.S. 1981 § 18–111.

12. In *Oklahoma Tax Commission v. Smith,* Okl., 610 P.2d 794, 801 [1980] we said that one adversely affected by a statute which he contends is invalid on its face need not violate the law in order to obtain a declaration as to its validity or invalidity. The same principle obtains here when the declaration of a statute's validity is sought as a result of an Attorney's General opinion that hinders its implementation.

13. *Underside v. Lathrop,* Okl., 645 P.2d 514, 517 [1982]; *Cleary Petroleum Corp. v. Harrison,* Okl., 621 P.2d 528, 530 [1980]; *Application of State ex rel. Dept. of Transportation,* Okl., 646 P.2d 605, 609 [1982]; *Sarkeys v. Ind. School Dist. No. 40, Cleveland County,* Okl., 592 P.2d 529, 536 [1979].

14. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 [1962]; *Flast v. Cohen,* 392 U.S. 83, 100, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 [1968]; *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 [1980].

15. *Cleary Petroleum Corp. v. Harrison,* supra note 13; *Underside v. Lathrop,* supra note 13.

attorney general.[16] Judicial power was thus properly invoked but only insofar as this court is called upon to determine whether the challenged opinion can pass muster as a valid legal obstacle to an expenditure of public funds under the Act for the use of recognized political parties.

## III.

## THE ATTORNEY'S GENERAL OPINION AND THE CONSTITUTIONAL ISSUES RAISED THEREBY

The opinion in suit was issued in response to a legislative inquiry about the constitutionality of the Act. The inquiry was directed to the following constitutional considerations:

"1. [Citing the Oklahoma Constitution, Art. 5, § 55]...

"a. Since the bill [House Bill 1027] provides for the payment of funds out of the public treasury and is not an appropriations bill, is it constitutional?

"b. Is the bill constitutional since it contemplates payments being made two and one-half years after its passage?

"c. Assuming that the bill is an appropriation made by law, is it constitutional since it does not specify a sum certain to be appropriated?

"2. Is the bill constitutional in light of Article 5, Section 56, which provides that a general appropriations bill shall embrace nothing but appropriations for the expenses of the executive, legislative and judicial departments of the state and for interest on the public debt?

"3. Is the formula for distribution of funds to political parties encompassed in Section 10(2) based on party registration constitutional in light of the equal protection clause of the 14th Amendment to the United States Constitution?"

The Attorney General answered the first two questions by finding the bill to be constitutional. He found it unnecessary to answer the federal-law question because he concluded that the Act violates the state constitutional restrictions in Art. 10 §§ 14 and 15, Okl.Const.[17] He viewed the use of public funds by political candidates and political parties to be an impermissible gift to private individuals and private associations for nonpublic purposes.

In this proceeding the petitioners contend the Act has a public purpose and is therefore valid. They reason that if the expenditure of funds, as contemplated by the Act, is declared to be for a valid public purpose, it cannot be classified as a "gift". This is so because any expenditure in furtherance of a public purpose is, by its terms, the very antithesis of a prohibited gift. Until the Commission promulgates rules, the petitioners argue, the constitutional hurdles erected by the challenged opinion are not ripe for review since only the rules—not yet promulgated—may fashion the various categories of permissible public expenditures. They want us to assume that the rules will meet the pertinent constitutional requirements.

The Attorney General does not address the ripeness issue, but advances the arguments found in his opinion. He suggests that the Act does not effect a public purpose for which public money may be appropriated.

Because under the Act's distribution formula the Republican party—with less registered voters than the other—would receive a much smaller portion of the total party

16. *Application of State ex rel. Dept. of Transportation,* supra note 13.

17. The terms of Art. 10 § 14, Okl.Const. provide in pertinent part:
"Taxes shall be levied and collected by general laws, and for public purposes only ...."
The terms of Art. 10 § 15, Okl. Const. provide in pertinent part:

"The credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State; nor shall the State ... make donation by gift ... to any company, association, or corporation."

allocation,[18] its State Committee [Intervenors] argues that the Act's funding scheme is violative of both the Fourteenth Amendment's Equal Protection and of the Due Process Clauses.

## IV.

### THE CONSTITUTIONAL VALIDITY OF PUBLIC EXPENDITURES TO BENEFIT POLITICAL PARTIES

What remains to be considered is whether the legislature has provided a constitutionally permissible method of committing public money to benefit political parties.

Central to the controversy sought to be presented is the issue whether the expenditure of state funds for the activities contemplated by the Act is interdicted by the "public purpose" requirement of Art. 10 § 14, Okl.Const., or stands proscribed by Art. 10 § 15, Okl.Const., because it constitutes an impermissible "gift" in the form of appropriation of tax money for the benefit of a private entity. To test the constitutional validity of the Act in light of these constitutional limitations, we must necessarily look (a) to the policy of the law as declared by the legislature, (b) to the standards to be followed by an agency in carrying out the policy laid down by the lawmakers and (c) to administrative rules fashioned to implement the legislative will.[19]

We are unable to pass on the merits of this controversy because none of the elements essential for review is present here. *The Act does not articulate the policy that is to govern the Commission in supervising public reimbursement to eligible entities. No legislative standards stand prescribed and no Commission rules can be promulgated without offending the nondelegation doctrine.*[20] The categories of "campaign" expenses a political party may incur with funds to be received under the Act are, in this posture, left to pure conjecture. The amorphous terms of the Act unfold an open-ended panorama of expenses that may—for what we know—range from taxicab fare in payment of transportation for carrying indigent or infirm voters to the polling places (or for some other indirect subsidy to individual electors) all the way to media publicity for programs designed to inform the public of the party's current platform.[21] The impact of our constitutional interdiction that bans "gifts" can hardly

**18.** The Act provides that after each political party has received its ten percent of the amount allocated to political parties, the balance of the allocation is to be distributed to the political parties on a ratio basis. The ratio is to be the same as that between registered voters in each political party of the State as shown in the most recent January 15th registration report to the State Election Board Secretary. 26 O.S. 1981 § 18–110.

**19.** What constitutes a public purpose lies properly within the province of the legislature. *Helm v. Childers,* 181 Okl. 535, 75 P.2d 398, 399 [1938]; *Way v. Grand Lake Ass'n, Inc.,* Okl., 635 P.2d 1010, 1015–1018 [1981]. Courts are not free to interfere with a legislative declaration of public purpose by injecting their own concept of economic philosophy. *Application of Goodwin,* Okl., 597 P.2d 762, 766 [1979]. Neither may the courts be concerned with the wisdom, propriety, desirability and practicality of legislation under challenge. *Application of Oklahoma Capitol Improvement Authority,* Okl., 355 P.2d 1028, 1031 [1960].
The "public purpose" and "gift" interdictions of §§ 14 and 15 were tested in *Grand Lake Ass'n,* supra. We held that the provisions of the Tourism and Recreation Act there under challenge—which authorized funding of multicounty organizations—did not violate these constitutional prohibitions. Unlike the Act in suit, the tourism statute had expressly declared the legislative policy to be followed and defined the category of expenditures for which reimbursement could be sought. All claims of the multicounty organizations to be benefited by that act were required to be processed through the state budget office, on state-approved claim forms and pursuant to an approved budget.

**20.** An express and detailed declaration would provide the courts with a workable standard for review of the various categories of contemplated campaign-related expenses for which public reimbursement is to be effected. It would also enable the legislators to monitor the performance of executive agencies charged with enforcement duties.

**21.** The only limitations upon the use of the funds by political parties is that funds shall not be "expended for primary election expenses, nor for expenses related to the selection of a candidate at a political convention, nor for direct support of individual candidates in a general election." 26 O.S. 1981 § 18–108. The Act sets out *no* limitation upon the use of the

be judicially assayed when that which is to be pronounced as constitutionally sanctioned or proscribed has not been articulately structured. In short, this suit calls upon us to free from the constitutionally-condemned category of "gift" public funds to be made available under an undefined policy of the legislature and pursuant to rules—not yet fashioned—which cannot be lawfully promulgated.[22]

[22] funds for campaign expenses by political candidates. The Campaign Commission is given free range, within the strictures of § 18–108, to fashion allowable campaign expenses for which the funds may be used.

**22.** The authority of Congress to enact legislation to finance presidential campaigns was tested in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 [1976]. The federal act differs from the state in several respects. See 86 Stat. 3 and 88 Stat. 1263. Pertinent provisions of the federal act are: (1) A presidential candidate opting for federal funds cannot raise private funds except to the extent necessary to make up a deficiency in the fund. A ceiling is placed on the expenditures of federal funds by candidates in the presidential campaign. (2) Political parties are limited to spending federal funds to defray expenses incurred with respect to presidential nominating conventions. The Court in *Buckley* looked to the legislative history as reflected in various Senate Reports to determine the congressional purpose in passing the act. The purpose was described as one "to reduce the deleterious influence of large contributions on our political process, to facilitate communication by candidates with the electorate and to free candidates from the rigors of fund raising." 424 U.S. at 91, 96 S.Ct. at 669. Congress' authority to enact this legislation was determined to derive from a direct grant in the federal constitution under the General Welfare Clause. Art. 1 § 8, U.S. Const.

**23.** Art. 5 § 1, Okl. Const.; Art. 4 § 1, Okl. Const. The constitutional doctrine against delegation of legislative power rests on the premise that the legislature must not abdicate its responsibility to resolve fundamental policy making by delegating that function to others or by failing to provide adequate directions for the implementation of its declared policy. When the legislature sets the parameters of its policy and then delegates to some agency the task of implementing that policy under articulated safeguards, there is *no* violation of the doctrine. *Application of State ex rel Dept. of Transportation,* supra note 13 at 611; *Oliver v. Oklahoma Alcoholic Beverage Control Board,* Okl., 359 P.2d 183, 187–189 [1961]; *City of Sand Springs v. Department of Public Welfare,* Okl., 608 P.2d 1139, 1144 [1980]; *Continental Oil Co. v. Okla-*

▮▮▮ The fundamental function of policy-making has been left by the Act to unbridled agency discretion. Power so to be exercised by an agency does not rest on constitutionally firm underpinnings.[23] While the constitutional doctrine of nondelegation has been somewhat relaxed in several jurisdictions,[24] its force in this state remains undiminished.[25] The doctrine teaches that the legislature must establish

*homa State Bd. Equalization, Okl., 570 P.2d 315, 317 [1977]; Harris v. State ex rel. Oklahoma Planning and Resources Board,* 207 Okl. 589, 251 P.2d 799, 802–803 [1952]; *American Home Products Corporation v. Homsey,* Okl., 361 P.2d 297, 302 [1961].

**24.** 1 K. Davis, Administrative Law Treatise §§ 2.4 and 3.15 [2d ed. 1978]; Schwartz, Of Administrators and Philosopher-Kings: The Republic, the Laws, and Delegations of Power, 72 N.W.U.L.Rev. 443, 449 [1977]. *Cf.* Peckinpaugh, Florida's Adherence to the Doctrine of Nondelegation of Legislative Power, 7 Fla.St.U. L.Rev. 541 [1979]; Wright, Beyond Discretionary Justice, 81 Yale L.J. 575, 582–587 [1972].

**25.** The formulation of policy is a legislature's primary responsibility, entrusted to it by the electorate, and to the extent the legislature delegates authority under indefinite standards, this policy-making function is passed on to other agencies not answerable in the same degree to the people. No matter how laudable a piece of legislation may be in the minds of its sponsors, objective guidelines or standards should appear expressly in the act. *Black v. Oklahoma Funding Bond Commission,* 193 Okl. 1, 140 P.2d 740, 744–745 [1943]; *State v. Parham,* Okl., 412 P.2d 142, 150 [1966]; *City of Sand Springs v. Department of Public Welfare,* supra note 23; *Continental Oil Co. v. Oklahoma State Board of Equalization,* supra note 23; *Ludwig v. Yancey,* Okl., 318 P.2d 450, 453 [1957]; *American Home Products Corporation v. Homsey,* supra note 23.

Until the U.S. Supreme Court's decision in *Industrial Union Department, AFL–CIO v. American Petroleum Institute,* 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 [1980], the Court had not since 1935 invalidated a statute on delegation grounds. See *Panama Ref. Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 466 [1935] and *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 [1935]. During the interim decades the nondelegation doctrine had not been applied in any meaningful way by the federal courts. *Industrial Union,* supra, marks a revival of the nondelegation doctrine in American jurisprudence. See The National Law Journal, January 19, 1981, page 24.

its policies and set out definite standards for the exercise of an agency's rulemaking power.

The issue of constitutional validity of the Act's provisions that authorize appropriation of public funds for campaign expenses of political parties is not here in a posture fit for adversarial forensic testing. The controversy is not presently justiciable. This is so because:

(1) Commission rules—upon which implementation of the Act and expenditure of funds is dependent—cannot validly be promulgated inasmuch as, in its present form, the Act expresses *no* legislative policy nor does it articulate the standards to be carried into effect.

(2) Absent a declared policy with effective agency rules fashioned pursuant to a lawfully delegated authority, the Act is unfit for implementation.

Undeclared legislative policy stands here as an obstacle to effective rulemaking. Until policy is enacted and implemented by agency rules, all the issues tendered here lack the necessary attributes of justiciability. We therefore hold that the Act declared to be invalid by the challenged opinion of the Attorney General cannot presently undergo the desired adversarial testing in a judicial forum.

Writ denied.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER and HARGRAVE, JJ., concur.

SIMMS, DOOLIN and WILSON, JJ., dissent.

SIMMS, Justice, dissenting:

I dissent. I would refuse to assume jurisdiction of this request for the Court to pass on the validity or correctness of an Attorney General's Opinion for the reasons stated in the dissenting opinion in *Okla. Assn. of Mun. Attys. v. State,* Okl., 577 P.2d 1310, 1315 (1978).