Dear Executive Director Coleman,
¶ 0 This office has received your request for an official Opinion asking, in effect, the following question:
Is 27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308] which sets standards forthe issuance of a "certificate of need" for a biomedical wastedisposal facility unconstitutionally vague?
¶ 1 There are two ways in which a lack of specificity may render a statute unconstitutional: (1) it may amount to a unconstitutional delegation of legislative power to the executive branch, Democratic Party of Oklahoma v. Estep, 652 P.2d 271
(Okla. 1982), or (2) it may give inadequate notice of what it requires and thus fail to provide due process. HejiraCorporation v. McFarlane, 660 F.2d 1356, 1365 (10th Cir. 1981). These possibilities will be addressed in turn, but first it is important to review the provisions of the statute in question.
¶ 2 Title 27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308](A) provides that:
 No person, firm, association, corporation or cooperative shall construct, build or equip any waste processing or disposal facility which primarily disposes of or processes biomedical waste unless a certificate of need therefor has been issued pursuant to this section.
¶ 3 The section further provides that in order to obtain a certificate of need ("CON") an applicant must submit the following information to the Environmental Quality Board ("the Board"):
1. The name and location of the entity;
 2. The name and address of each person having an ownership interest in the entity;
 3. The nature of the construction, building or equipment;
 4. The size of the construction, building or equipment;
 5. The approximate cost of the construction, building or equipment;
6. The projected date of completion;
 7. That the action proposed in the application for such certificate of need is necessary and desirable in order to provide the services required in the locality to be served;
 8. That the proposed action can be economically accomplished and maintained;
 9. That the proposed action will contribute to the orderly development of services in the locality;
 10. Any documentation supporting the applicant's request for a determination of need. Such documentation shall include:
 a. the availability of disposal processing or disposal facilities in the designated area including but not limited to the location, area of service, and number of clients served,
 b. the adequacy of financial resources for the new facility and for the continued operation thereof, and
 c. any other matter which the Board deems appropriate; and
 11. Any other information as the Board shall prescribe.
27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308](B).
¶ 4 The Board is to review this information and, after investigation, issue a certificate only if it determines that:
 1. The action proposed in the application for such certificate of need is necessary and desirable in order to provide the services required in the locality to be served;
 2. The proposed action can be economically accomplished and maintained; and
 3. The proposed action will contribute to the orderly development of services in the locality.
27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308](D).
 I. DELEGATION
¶ 5 In setting out the framework for State government, the Oklahoma Constitution provides for a separation of powers:
 The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; . . . [the] departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.
Okla. Const. art. IV, § 1.
¶ 6 The essence of legislative power is the declaration of policy, just as the implementation of policy is the essence of executive power. City of Sand Springs v. Department of PublicWelfare, 608 P.2d 1139, 1146 (Okla. 1980). The power to determine policy cannot, consistent with the Constitution, be delegated by the Legislature. Democratic Party of Oklahoma v.Estep, 652 P.2d 271, 277 n. 23 (Okla. 1982); Isaacs v. OklahomaCity, 437 P.2d 229, 233 (Okla. 1966). However, the Legislature may, and frequently must, delegate to administrative agencies the responsibility for making the determinations and developing the regulations necessary for the implementation of these policies.State v. Parham, 412 P.2d 142, 147 (Okla. 1966).
¶ 7 While the courts have acknowledged that "the line dividing those delegations by the Legislature which are constitutional and those which are not is indeed a thin line," State v. Smith,539 P.2d 754, 756 (Okla.Crim.App. 1975), they have provided some guidance in determining where that line is to be drawn. "The general rule is that if the statute involved lays down the policy of the Legislature and establishes a standard or guideline for administrative action, the delegation is proper." Parham,412 P.2d at 150. Stated differently: "When the legislature sets the parameters of its policy and then delegates to some agency the task of implementing that policy under articulated safeguards, there is no violation of the [nondelegation] doctrine."Democratic Party, 652 P.2d at 277 n. 23.
¶ 8 It has been said that Oklahoma courts have been more vigilant than most in guarding against the improper delegation of legislative power. See Democratic Party of Oklahoma v. Estep,652 P.2d 271, 277 (Okla. 1982); Gary J. Greco, Standards orSafeguards: A Survey of the Delegation Doctrine in the States, 8 Admin. L.J. Am. U. 567, 603 n. 72 (1994); Bernard Schwartz, Administrative Law 65 (3d ed. 1991). Nevertheless, Oklahoma precedents have regularly upheld quite broad delegations of regulatory authority to administrative agencies. A number of these decisions have involved delegations substantially more broad than the measure at issue here.
¶ 9 In State v. Parham, 412 P.2d 142 (Okla. 1966), the Oklahoma Supreme Court rejected a challenge to the Alcohol Beverage Control Board's rule that all wholesale liquor dealers carry the eighteen most popular brands of alcoholic beverages, a rule that was intended to encourage head to head competition among the wholesalers in all of the major brands. The Legislature had given the Board the expansive power "[t]o promulgate rules and regulations . . . to carry out the purpose of [the Alcohol Beverage Control] Act[.]" Id. at 147 (quoting pertinent statute). Examining this provision in the context of the statute as a whole, the Court discerned a general intent to encourage competition in the liquor business. This, in the Court's view, was "a sufficient standard or guideline" to constrain executive discretion and sustain the delegation of rulemaking authority.Id. at 152.
¶ 10 Similarly, in Harris v. State, 251 P.2d 799 (Okla. 1952), the Court held that the Oklahoma Planning and Resources Board had acted within properly delegated authority when it forbade the operation of houseboats on Lake Murray. Under the relevant statute the Board had the power to "prescribe and enforce rules and regulations for the . . . inspection of boats [and] the issuance of permits for the operation of water craft." 74 O.S. 1951, § 356.2[74-356.2](10). The Court found in the statutory grant of power to inspect boats an expression of a legislative policy of water craft safety. This policy had been given concrete application in the prohibition of houseboats. In the Court's view, the Planning and Resources Board had done nothing more than to "carry into effect and to aid in the enforcement of existing laws." Harris, 251 P.2d at 803.
¶ 11 Finally, in State v. Smith, 539 P.2d 754 (Okla. 1975), the defendant was prosecuted for violation of a regulation promulgated by the Wildlife Conservation Commission which prohibited the use of dogs in hunting deer. The Commission had been empowered by statute "to regulate the seasons and harvest of wildlife." The Court found that this was not an impermissibly broad delegation of legislative power. Rather, it noted that "[t]o require detailed and minute guidelines . . . would be to destroy the flexibility and effectiveness required in dealing with the many and varying factual situations that arise in carrying out the policy set by the Legislature." Id. at 756, (quoting Parham, 412 P.2d at 150.)
¶ 12 The statute at issue here involves far more detailed legislative direction than that involved in either Parham,Harris, or Smith. Rather than giving generalized authority to "regulate biomedical waste facilities" or to "carry out the purposes of the Act," the biomedical waste statute sets up the concrete requirement that a person wishing to process or store biomedical waste first obtain a certificate of need. It then specifically mandates that in determining whether the certificate should be granted the Board is to consider, inter alia, the "availability of disposal processing or disposal facilities in the designated area" and "the adequacy of financial resources for the new facility." 27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308](B)(10)(a) and (b). From this information the Board must determine whether the proposed facility "can be economically accomplished and maintained," and whether it will "contribute to the orderly development of services in the locality." 27A O.S. Supp. 1996, §2-10-308[27A-2-10-308](D)(2) and (3).
¶ 13 The Legislature has laid down the policy that biomedical waste facilities are not to be constructed without a certificate of need. It has established the standards by which the Environmental Quality Board is to determine such need. The biomedical waste certificate of need provision is therefore not an unconstitutional delegation of legislative power.
 II. DUE PROCESS
¶ 14 Even though the statute is sufficiently clear so as not to amount to an unconstitutional delegation of legislative power, the question still remains whether it is so vague as to offend due process. Both the Oklahoma and United States Constitutions prohibit depriving any person of "life, liberty, or property, without due process of law." Okla. Const. art. II, § 7; U.S. Const. amend. XIV, § 1. The requirements of the two constitutions are coextensive, and so can be examined simultaneously. OklahomaAssociation for Equitable Taxation v. Oklahoma City,901 P.2d 800, 805 (Okla. 1995); DuLaney v. Oklahoma State Department ofHealth, 868 P.2d 676, 685 (Okla. 1993).
¶ 15 An overly vague law can violate the due process requirement in two primary ways — by not giving adequate warning to those who must adjust their conduct to comply with the law and by creating the opportunity for arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108
(1972). However, "[t]he degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment." Village of Hoffman Estates v. The Flipside, HoffmanEstates, Inc., 455 U.S. 489, 498 (1982). Criminal laws and measures that affect individual rights are scrutinized the most carefully. Id. at 498-99. Where, as here, the statute is civil in character and affects only economic interests far less specificity is required. Id.
¶ 16 The Tenth Circuit has indicated that facial challenges to licensing statutes are especially disfavored and described the standard for notice to the public in this context as follows:
 Ordinarily, a state [licensing scheme] is unconstitutionally vague on its face for purposes of a due process challenge only when its terms are stated in such generality that "no standard of conduct is specified at all."
S S Pawn Shop Inc. v. City of Del City, 947 F.2d 432, 439
(10th Cir. 1991) (emphasis added) (citation omitted).
¶ 17 The measure at issue here more than meets this indulgent standard. The statute specifies that before any person constructs a biomedical waste facility he or she must first must obtain a certificate of need. 27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308](A). The statute then proceeds to enumerate the categories of financial and demographic information that must be included in the application for a CON. Although the precise information required could no doubt be described in more detail, it cannot be said that "no standard of conduct is specified at all." Thus the first danger of vagueness identified in Grayned is avoided; the provision provides adequate notice to members of the public of what is required of them.
¶ 18 The second danger which vagueness presents — that the lack of specific standards could lead to arbitrary enforcement — is somewhat more substantial in this case. The factors outlined in Section 2-10-308 at subsections (B) and (D) do not dictate a specific result which can be known with certainty in advance. Instead, the statute places a degree of discretion in the hands of the Environmental Quality Board. But the delegation of discretion to a decision maker does not automatically violate due process.
 The Legislature may constitutionally confer discretion upon an administrative agency . . . if it limits the field in which that discretion is to operate and provides standards to govern its exercise. This does not mean, however, that a precise or specific formula must be furnished in a field where flexibility and the adaptation of the legislative policy to infinitely varying conditions constitute the essence of the program.
Levine v. Whalen, 349 N.E.2d 820, 822 (N.Y.Ct.App. 1976).See also Hornsby v. Allen, 326 F.2d 605, 612 (5th Cir. 1964) (licensing discretion must be exercised in light of standards which are reasonably ascertainable); Browning-Ferris Industriesv. Dance, 671 S.W.2d 801, 811 (Mo.Ct.App. 1984) (licensing "standards need not be spelled out in . . . detail"); WnekVending and Amusements v. City of Buffalo, 410 N.Y.S.2d 255, 258
(N.Y.Sup.Ct. 1978) (statute need "only afford a reasonable guide to the licensing authority").
¶ 19 Applying this standard, the courts have upheld against vagueness challenges a number of certificate of need statutes with language very similar to that at issue here. In Goodin v.Oklahoma, 436 F.Supp. 583, 585 (W.D. Okla. 1977), a three judge panel upheld the constitutionality of Oklahoma's certificate of need requirement for nursing homes. See 63 O.S. 1971, §§1-851-1-860. The long-term care CON requirement approved inGoodin contained language nearly identical to that in the biomedical waste certificate of need provision. Compare 63O.S. 1971, § 1-853[63-1-853] with 27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308](D). The Goodin Court found that the long-term care CON provision's "purpose and application appears clear and workable" and thus is not unconstitutionally vague. Goodin, 436 F.Supp. at 585. Other courts have reached similar conclusions regarding similar language. See Matter of Adoption of Regulations Governing StateHealth Plan, 637 A.2d 1246, 1248 (N.J. 1994) (it is sufficient if CON statute provides "general standards to guide the Department's review of certificate of need applications");Charter Medical-Fayette v. Health Planning Agency,351 S.E.2d 547, 549 (Ga.Ct.App. 1986) (statute need "not provide a precise mathematical formula for determining . . . need"); Dirt v.Mobile County Commission, 739 F.2d 1562, 1565 (11th Cir. 1984) (CON provisions need only be "amenable to reasonably concrete construction").
¶ 20 In the light of these precedents it cannot be said that Oklahoma's biomedical waste certificate of need requirement provides so little guidance to the Board as to violate due process. Although providing for the exercise of discretion, the statutory language sufficiently constrains the actions of the decision-maker so as not to render the certificate of need requirement unconstitutional on its face. The possibility remains, of course, that in particular factual circumstances the statute's lack of specificity might violate an individual's right to due process. However, we offer no opinion on that question here.
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
27A O.S. Supp. 1996, § 2-10-308[27A-2-10-308] which sets standards for theissuance of a certificate of need for biomedical waste disposalfacilities is not unconstitutionally vague. It is neither sobroadly worded as to amount to an unlawful delegation oflegislative power nor so uncertain in application as to violatedue process.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
CANNON MILES TOLBERT ASSISTANT ATTORNEY GENERAL