Dear Director Glazier,
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 The Nurse Licensure Compact ("Compact") is a uniform compact that, among other provisions, authorizes a multistate licensure privilege for registered nurses and licensed practical/vocation nurses licensed in any state that is a party to the Compact to practice nursing in all states that are parties to the Compact. To obtain or retain a license an applicant must meet the home state's qualifications for licensure and license renewal as well as other applicable laws. The Compact requires legislative authorization in the party states to be effective. Oklahoma has not enacted legislation adopting the Compact.
 Would participating in the Compact constitute an unlawful delegation of the State's sovereign power as the Compact authorizes the legislatures of other states, through absolute reciprocity, to determine the qualifications of persons authorized to practice nursing in Oklahoma?
You have requested an official Attorney General Opinion on behalf of the Oklahoma Board of Nursing to determine if it is consistent with Oklahoma law for Oklahoma to become a party to the Nurse Licensure Compact, [1] the final version of which was adopted by the National Council of State Boards of Nursing on November 6, 1998. You recognize that the Compact by its own terms would require enactment by the Oklahoma Legislature to be effective. Compact, art. X(a). *Page 2 
 THE PRACTICE OF NURSING IN OKLAHOMA
In 1953, the Oklahoma Legislature enacted the Oklahoma Nursing Practice Act ("Act"). See
1953 Okla. Sess. Laws ch. 12, §§ 1-15 (codified as amended at 59 O.S. 2001 Supp. 2010, §§ 567.1-567.17). In the purpose section of the Act the Legislature stated:
 A. 1. The education, certification and licensure of registered and licensed practical nurses or advanced unlicensed assistive persons, and the practice of registered or practical nursing or advanced unlicensed assistance in this state is hereby declared to affect the public health, safety and welfare and, in the public interest, is therefore subject to regulation and control by the Oklahoma Board of Nursing.
Id. § 567.2. The Legislature also declared it to be "a matter of public interest and concern" that the education of nurses and the practice of nursing "merit and receive the confidence of the public and that only qualified persons be authorized to practice in this state." Id. § 567.2(A)(2).
As the regulation of qualifications of persons engaged in the practice of nursing in Oklahoma impacts directly on the health and welfare of the public, such regulation is an exercise of the Legislature's police power. The Oklahoma Supreme Court recognized this with regard to the practice of medicine and other health-related occupations in DiMauro v. Oklahoma State Board ofMedical Examiners, 769 P.2d 759, 760-61 (Okla. 1989), [2] when it stated:
 By requiring licensing of persons involved in the practice of medicine and other health-related occupations the state is exercising its police power in the interest of the protection of its citizens. The field of medicine is a profession that impacts directly on the health and welfare of the public. Therefore, the creation of statutes designed to regulate persons choosing to practice medicine within the state is within the constitutional power of the state legislature.
Id. The Oklahoma Court of Criminal Appeals also recognized the right of the Legislature to regulate occupations and professions "for the protection of the lives, health, safety and welfare of its people." Cryan v. State,583 P.2d 1122, 1124 (Okla. Crim. App. 1978).
In the Oklahoma Nursing Practice Act, the Legislature established certain qualifications for registered nurses and licensed practical nurses. Pursuant to 590.S.2001, § 567.5, a registered nurse applicant must submit to the Oklahoma Board of Nursing certified written evidence that the applicant: *Page 3 
 A. 1. Has completed the basic professional curricula of a school of nursing approved by a state board of nursing, and holds or is entitled to hold a diploma or degree therefrom;
 2. Has never been convicted in this state, the United States or another state of any felony, unless five (5) years have elapsed since the date of the criminal conviction or the termination of any probation or other requirements imposed on the applicant by the sentencing court, whichever shall last occur, or a presidential or gubernatorial pardon for the criminal offense has been received, provided that the provisions of this paragraph shall not be effective until November 1, 2003;
 3. Has submitted a criminal history records search conducted by the Oklahoma State Bureau of Investigation that is not more than ninety (90) days old; and
 4. Has met such other qualifications as the Board may prescribe in its rules.
 An applicant for a license shall be required to pass a written examination in such subjects as the Board may determine. Upon successfully passing such an examination, the Board shall issue to the applicant a license to practice as a registered nurse. An applicant who fails such examination shall be subject to reexamination according to the rules of the Board. The passing criteria shall be established by the Board in its rules.
Id.
This licensing statute also contains a provision pertaining to applicants who are licensed in other states. That section provides:
 B. The Board may issue a license to practice nursing as a registered nurse without examination to an applicant who has been duly licensed as a registered nurse under the laws of another state, territory, the District of Columbia or a foreign country, if such applicant meets the qualifications required for licensing as a registered nurse in this state.
Id. (emphasis added). *Page 4 
A similar rule exists for licensed practical nurses although the educational requirements are relaxed.See 59 O.S.Supp. 2010, § 567.6[59-567.6]. The provision pertaining to out-of-state licensees is substantially the same for licensed practical nurses as for registered nurses.Id. §§ 567.5(B), 567.6(B).
The Board of Nursing may issue temporary licenses to nurses from other states upon proper application, but no license may be issued for more than ninety days. Id. § 567.15. "Temporary licenses may be renewed at the discretion of the Board [of Nursing] but shall not extend over a period longer than one (1) year." Id. The Board of Nursing has the authority, "1. [t]o deny, revoke or suspend any: a. license to practice registered nursing or licensed practical nursing, . . . 2. [t]o assess administrative penalties; or 3. [t]o otherwise discipline a licensee."Id. § 567.8(A)(1), (2), (3).
We consider your questions regarding the Compact in light of these provisions governing the practice of nursing in Oklahoma.
 BACKGROUND INFORMATION REGARDING THE NURSE LICENSURE COMPACT
The history of the Compact is explained by the National Council of State Boards of Nursing ("NCSBN") at https://www.ncsbn.Org/l 56.htm. The process for creating the Compact began in 1996 at the National Council of State Boards of Nursing ("NCSBN") Delegate Assembly when delegates voted to investigate different mutual recognition models. "At the 1997 Delegate Assembly, delegates unanimously agreed to endorse a mutual recognition model of nursing regulation." Id. Strategies for implementation were also developed that year and the Nurse Licensure Compact Administrators ("NLCA") was established to develop rules and manage compact implementation. "The Model NLC Legislation was adopted by the NCSBN Delegate Assembly on November 6, 1998." Id. The Compact "began January 1, 2000, when it was passed into law by the first participating states: Maryland, Texas, Utah and Wisconsin."Id.
The primary feature of the Compact is that registered nurses and licensed practical/vocational nurses who are licensed in their home state, defined in Article 11(e) of the Compact as the nurse's primary state of residence, are authorized to engage in the practice of nursing in other party states. A "`party state' means any state that has adopted this Compact." Compact, art. II(j). The Compact in pertinent part provides:
 A license to practice registered nursing issued by a home state to a resident in that state will be recognized by each party state as authorizing a multistate licensure privilege to practice as a registered nurse in such party state. A license to practice licensed practical/vocational nursing issued by a home state to a residence in that state will be recognized by each party state as authorizing a multistate licensure privilege to practice as a licensed practical/vocational nurse in such party state. In order to obtain or retain a license, an applicant must meet the home state's qualifications for licensure and license renewal as well as other applicable state laws. *Page 5 
Compact, art. 111(a). Under this provision, registered nurses and licensed practical/vocational nurses who meet the requirements for licensure in their home state are authorized to practice nursing in any state that is a party to the Compact.
The Compact contains a number of other provisions including those providing for adverse action, the granting of additional authority to state nurse licensing boards, and the establishment of a coordinated licensure information system. See Compact.
 I. PARTICIPATING IN THE COMPACT WOULD CONSTITUTE AN UNLAWFUL DELEGATION OF OKLAHOMA'S SOVEREIGN POWER AS THE COMPACT AUTHORIZES THE LEGISLATURES OF OTHER STATES TO DETERMINE THE QUALIFICATIONS OF PERSONS ADMITTED TO PRACTICE NURSING IN OKLAHOMA WITHOUT THE ADOPTION OF ANY STANDARDS.
You ask whether participation in the Compact would constitute an unlawful delegation of legislative power, in that the Compact authorizes the legislatures of other states to determine the qualifications of persons authorized to practice nursing in Oklahoma.
We have established above that the regulation of nurse licensing is an exercise of the state's police power. Courts have held in cases involving the delegation of the Legislature's police power to a private corporation or entity, "that the Legislature may not part with, or delegate to others, its right to exercise the police power." Cities Serv. Gas Co. v. Witt,500 P.2d 288, 290 (Okla. 1972); Sloan v. Ringwald,940 P.2d 234, 235 (Okla. Civ. App. 1996) (quoting Cities Serv. GasCo.). This prohibition against delegation is not absolute, however, as courts have often recognized that the Legislature may delegate to municipalities and to administrative boards.Wilcox Oil Gas Co. v. Walker, 32 P.2d 1044, 1047 (Okla. 1934). To prevent the Legislature's role from being usurped, the ability to delegate rule making to administrative agencies is subject to the condition that the statutory scheme "must establish [the legislative] policies and set out definite standards for the exercise of any agency's rule making power." Tulsa County DeputySheriff's Fraternal Order of Police v. Bd. of County Comm `rs,995 P.2d 1124, 1128 (Okla. 2000) (quoting Democratic Party v.Estep, 652 P.2d 271, 277-78 (Okla. 1982).
Administrative rule making is not involved in your question. Rather the question is whether the Oklahoma Legislature may delegate authority to other states, in essence, to adopt qualifications for the practice of nursing in Oklahoma. A review of authorities shows that the critical issue in determining whether delegation is proper in any given case is whether authority is delegated with sufficient standards to implement legislative public policy.
In City of Oklahoma City v. State ex rel. Oklahoma Department ofLabor, 918 P.2d 26, 28 (Okla. 1996), the Oklahoma Supreme Court invalidated a statute where authority was delegated to a federal agency with no standards for implementation. The plaintiff challenged Oklahoma's Minimum Wages on Public Works Act (40 O.S. 1991, §§ 196.1 — 196.14), on the basis that it delegated the authority to make wage determinations to a federal agency with no review by the Oklahoma Labor *Page 6 
Commissioner. Id. at 29. The Court noted the prohibition against delegation "rest[ed] on the premise that the legislature must not abdicate its responsibility to resolve fundamental policy making by [1] delegating that function to others or [2] by failing to provide adequate directions for the implementation of its declared policy." Id.
(quoting Estep, 652 P.2d at 277 n. 23) (the constitutional doctrine of nondelegation teaches that the Legislature may not abdicate its responsibility to resolve fundamental policy making by delegating that function to others or by failing to provide adequate directions for the implementation of its declared policy).
The Minimum Wages on Public Works Act was found to violate OKLA. CONST, art. IV, § 1 and OKLA. CONST, art. V, § 2, as the Act provided no definite standards or articulated safeguards for the United States Department of Labor to follow in implementing the legislative policy declared in the Act. In considering this issue, the Court stated:
 The current Act leaves an important determination to the unrestricted and standardless discretion of unelected bureaucrats. Worse, it delegates to an administrative arm of the federal government. As a result, the federal agency which actually determines the prevailing wage is less answerable to the will of the people of Oklahoma than is the Labor Commissioner who holds elected office. It leaves public entities with no Oklahoma forum in which to challenge the accuracy of the United States Department of Labor's wage determinations.
Id at 30. Although the Legislature had declared its policy in the Act, there were no standards or guidelines for determining prevailing wages. Thus, the Court found the statute impermissibly delegated legislative power. Id.
Similarly, in Potter v. State,509 P.2d 933, 934-35 (Okla. Crim. App. 1973), the Oklahoma Court of Criminal Appeals found an unconstitutional delegation of power when the Legislature made it a felony for "[a]ny person who knowingly buys, sells, barters, traffics in, or causes to be delivered or transported in Oklahoma, any picture, moving picture, series of pictures, drawing, diagram or photograph of any person or animal or caricature thereof in an act or acts of sexual intercourse," but exempted those pictures that "have the seal under the Production Code of the Motion Picture Association of America, Inc.," or were "imported from foreign countries into the United States and have been passed by a Customs Office of the United States Government at any port of entry."Id. at 934 (quoting 21 O.S. 1971, § 1040.51). The defendant claimed the statute constituted an unconstitutional delegation of legislative authority as it failed to set forth a standard prescribing the guidelines or rules to be followed by the Motion Picture Association or the United States Custom Office for determining which motion pictures would be exempted from prosecution. The Court stated:
 It is fundamental that the legislature may not delegate its power to make laws, although it may vest certain administrative functions in other bodies where it declares the policy and fixes the legal principles to govern that body in administering legislative enactments. The general rule has become fixed that the legislature may not delegate legislative functions to private persons. *Page 7 
Id. at 934-35 (citations omitted). The Court of Criminal Appeals noted the proviso exempting motion pictures was a "grant of power unfettered by guides, restrictions, or standards."Id. at 935. The Court concluded, "the legislature may not delegate such power to a privately controlled out of state association, or body, wholly outside the jurisdiction of the state, without establishing some standards for guidance." Id.
Applying these authorities to the Compact requires a finding that the Compact constitutes unlawful legislative delegation. The Oklahoma Legislature has articulated in the Oklahoma Nursing Practice Act, that "the education of nurses . . . and the practice of nursing . . . merit and receive the confidence of the public and that only qualified persons be authorized to practice in this state." 59 O.S. 2001, § 567.2[59-567.2](A)(2). Under the Compact, nurses licensed to practice in any state that is a party to the contract would be authorized to practice in Oklahoma. See Compact, art. 111(a). There are no standards or guidelines in the Compact for determining whether nurses meet the requirements for qualification established by the Oklahoma Legislature to engage in the practice of nursing in Oklahoma. See Compact. The Compact would authorize nurses to practice in Oklahoma who may have education and experience far less than that required under Oklahoma law. See id.
Similarly, a nurse could practice in Oklahoma who has a recent felony conviction if such were not disallowed in another party state. Id. Further, Oklahoma would not be assured that the licensing restrictions which are in place in other states at the time of joining the Compact would remain in place throughout the terms of the contract. This is the type of "unrestricted and standardless" discretion which the Court spoke out against inOklahoma Department of Labor, 918 P. 2d at 30.
Other state Attorneys General have also come to the conclusion that the Compact violates their laws against delegation as it allows the legislatures of other states to establish the qualifications for the licensure of nurses practicing in the home state. See
Neb. Op. Att'y Gen. 99014(1999 WL 1041927) (legislature may not adopt from another jurisdiction statutes or regulations that are not yet in existence at the time of adoption, or which are subject to amendment); Kan. Op. Att'y Gen. 99-3 99014 (1999 WL 65880) (enactment of the Compact would essentially delegate to the legislatures of other states authority to set the minimum licensure requirements for licensees of those states who practice in Kansas); La. Op. Att'y Gen. 06-0062 (1999 WL 3248552) (Compact found to be an unconstitutional delegation of legislative authority as it allowed other state legislatures the unqualified right to determine the qualifications for the practice of nursing in Louisiana by nonresidents).
Oklahoma law recognizes licenses from other states in a number of instances where the requirements of other states' laws comply with Oklahoma law. For instance, Oklahoma recognizes a valid concealed weapons permit or license issued by another state providing certain conditions are met such as requiring a criminal history record search, prohibiting those convicted of a felony offense from obtaining a permit or license and requiring competence qualification or training. 21 O.S.Supp. 2010, § 1290.26[21-1290.26]. The Funeral Services Licensing Act authorizes the Oklahoma Board of Funeral Directors to issue licenses to those licensed in other states, "which have equal or like educational requirements as required by this state or the Board." 59 O.S. 2001, § 396.8[59-396.8](A). The Commissioner of Health is also authorized to issue a license for an applicant licensed in another state to practice as a licensed marital and family therapist, "if the Commissioner deems such applicant to *Page 8 
have qualifications equivalent to or which exceed those required pursuant to the provisions of the Marital and Family Therapist Licensure Act and if the Commissioner finds the applicant meets the standards, provided by rule, for license by endorsement."Id. § 1925.9.
The Compact does not require those licensed to practice nursing in another state to meet the standards for licensing in Oklahoma and does not contain a provision authorizing Oklahoma to establish its own licensing requirements. Instead, it allows other states' legislatures, through absolute reciprocity, to determine the qualifications for the practice of nursing in Oklahoma. Therefore, we conclude the Compact violates Oklahoma's prohibition against delegating legislative authority.
It is, therefore, the official Opinion of the Attorney Generalthat:
 Enactment of the Nurse Licensure Compact by the Oklahoma Legislature would constitute an unlawful delegation of Oklahoma's police power as the Nurse Licensure Compact does not establish standards for the implementation of state policy, but authorizes the legislatures of other states to determine by absolute reciprocity the qualifications of persons admitted to practice nursing in Oklahoma. See City of Okla. City v. Okla. Dep't of Labor, 918 P.2d 26, 29 (Okla. 1996); Potter v. State, 509 P.2d 933, 935 (Okla. Crim. App. 1973).
E. SCOTT PRUITT, Attorney General Of Oklahoma
SANDRA D. RINEHART ASSISTANT ATTORNEY GENERAL
[1] Nurse Licensure Compact Administrators, Nurse Licensure Compact [hereinafter Compact] (Nov. 6, 1998) (on file with the Attorney General Office).
[2] Overruled on other grounds in Davuluriv. Stateexrel. Okla. Bd. of Med. Licensure Supervision, 10 P.3d 198,202 (Okla. 2000). *Page 1