McDONALD v. IDEAL MANUFACTURING CO.

1. APPEAL AND ERROR—ESTOPPEL TO ALLEGE ERROR.
    Whether or not there is a substantial conflict in the evidence on a certain issue, is not before the court, where plaintiff in error requested the trial judge to charge that that issue was solely for the jury.

2. MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — ACTION FOR BREACH—INSTRUCTIONS.
    In an action by a servant for breach of a yearly contract of employment, evidence examined, and *held*, not to support an instruction interpreting a witness' testimony as being to the effect that the contract was terminable on 30 days' notice.

3. WITNESSES—PRODUCTION OF BOOKS—DISCRETION OF COURT.
    Where plaintiff served a subpœna duces tecum for the production of defendant's books, and it appeared that there were some 21 of them, consisting of about 700 pages each, it was proper to require him to send some one to examine the books to at least ascertain what particular books were necessary, but plaintiff should not have been limited to sending some one to check over a statement from the books furnished by defendant.

Error to Wayne; Donovan, J. Submitted December 6, 1905. (Docket No. 156.) Decided January 24, 1906.

Assumpsit by Peter E. McDonald against the Ideal Manufacturing Company for breach of a contract of employment. There was judgment for defendant, and plaintiff brings error. Reversed.

*Edward S. Grece* and *John H. McIntyre*, for appellant.

*John H. Bissell*, for appellee.

BLAIR, J. Plaintiff brings this action to recover damages growing out of an alleged breach of a contract of

143 MICH.—2.

employment. Plaintiff claims that he was employed by defendant for one year, from April 1, 1901, at a salary of $2,000 and $5 per day as traveling expenses.

"It was also agreed that when my sales amounted to $76,500, 5 per cent. of which would be equal to the amount of my salary and expenses, I was to have 5 per cent. on all sales over that amount.    *    *    *

"If a special man went from the factory or company to sell goods in my territory and gas stoves or any other material made by them, I was to have credit for those sales."

Defendant claims that plaintiff was not hired for one year, but for an indefinite period, with a distinct understanding that the contract could be terminated at any time upon 30 days' notice. These conflicting claims as to the duration or term of the employment present the principal question of fact in the case. It is doubtful, to say the least, whether there was any real conflict as to the term of the employment, but inasmuch as the plaintiff requested the court, in his first request to charge, to instruct the jury that "the question is whether or not the plaintiff was employed by the year at a yearly salary, payable semi-monthly, is for the jury to determine solely," the question is not open on this record.

We think, however, that the court erred in charging the jury as follows, viz. :

"If the evidence is as Bush testified in his deposition at least five times (I have the quotations here), at least five times, that it was at the rate of say $1,200 a year, or whatever it was, at the rate of $1,200 as paid like all the help in the works he said, in one place, and he said they had a right, in one place, to cut them off at any time, and another 30 days, that would be the end of the transaction, that would be 1, 2, 3, and I will add 4."

This charge clearly gave the jury to understand that Bush had testified that the agreement provided that plaintiff could be discharged on 30 days' notice. We do not think his testimony will bear such an interpretation. At all events, it cannot be said that such is the necessary in-

terpretation. So far as this question is concerned, Bush testified:

" Q. Did not all the terms of employment between the company and the salesmen made under their direction or by you contain a proviso that the employment could discontinue or terminate on a notice of 30 days by either party ?

" A. I made it a rule, and to the best of my recollection never deviated from it but once (that was in the employment of Mr. Marsh); that is, that I had a distinct understanding with each person that they could be and would be dismissed without a moment's notice if they disobeyed orders or did not fully comply with the terms of their employment. I cannot remember any deviation from any of the above answer as to the 30 days' notice. My recollection of Mr. McDonald's employment was to be at a certain rate per year, his services to be terminated at any time by the company, but only for reasons warranting a dismissal."

There was no other testimony in the case from which the jury could legitimately infer that the agreement was terminable upon 30 days' notice. It is true that the plaintiff testified that on two different occasions prior to April, 1901, he had sent in his resignation to take effect in 30 days. But he says that Bush refused to receive it, claiming that plaintiff was employed for a year, and he therefore went on with his work.

One of the jurors questioned him upon this subject:

" You say you sent in a resignation twice; each time giving 30 days' notice ?

" A. Yes, sir.

" Q. If you were employed by the year, what right had you to resign, giving them 30 days' notice ?

" A. Well, I did not have any right.

" Q. Would it not indicate giving 30 days' notice ? Would it not indicate that you each had the right to sever it on 30 days' notice ? Would it not rather indicate that you had the 30 days in your own mind ?

" A. Well, it was never understood that way orally, really. Mr. Bush, the first one I sent, refused it on the ground I was employed by the year."

It is apparent from this testimony, which is undisputed, that neither Mr. Bush nor plaintiff understood that plaintiff had a right to resign and leave the company's employ without its consent. It is plain, therefore, that the statement of the court, as his interpretation of Bush's testimony, that the agreement was terminable on 30 days' notice, was prejudicial error.

Plaintiff also contends that the court erred in not requiring the production of certain of defendant's books. The court refused to order their production, upon the ground that they were cumbersome and unnecessary, and to save time. Defendant's counsel says upon this point:

"We concede that, if the books had been necessary to make plaintiff's case, the inconvenience or expense to defendant would not have constituted an excuse for not producing them. But, on the showing made, the discretion of the trial court was properly exercised."

A subpœna duces tecum was regularly served for the production of the books, and we think that some of them were probably necessary to enable the plaintiff to make out his case. He could only show shipments made upon his orders by the books, and he could only show by them sales made by other agents in his territory. It appeared, however, that there were some 21 of these large books, of about 700 pages each, and the court, for the purpose of expediting the trial of the cause, required that plaintiff should send some one to check over the statement from the books furnished by defendant, instead of requiring all of the books to be brought into court and interrupting the trial for the purpose of examining them at length. While we do not think that plaintiff should be limited to merely checking over defendant's statement, we do not think it was unreasonable to require that he should endeavor at first to ascertain the desired facts in the manner suggested by the court. He at least could ascertain what particular books he wished produced, and avoid the delay incident to an examination of all of them in court. The court will undoubtedly make such order as may be necessary to af-

ford the plaintiff a proper opportunity to examine the books in advance of the new trial.

There are many other assignments of errors, which we do not think it necessary to discuss, since the errors complained of will probably not arise upon another trial.

For the error above pointed out, the judgment is reversed, and a new trial granted.

McAlvay, Grant, Hooker, and Moore, JJ., concurred.