## CARTER OIL CO. v. STATE BOARD OF EQUALIZATION et al.

No. 25146.    April 30, 1935.

James A. Veasey, L. G. Owen, and Forrest M. Darrough, for plaintiff in error.

J. Berry King, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., C. W. King, for Oklahoma Tax Commission, L. G. Harries, and A. L. Herr, for defendants in error.

WELCH, J. This is an appeal from the order of the State Board of Equalization dismissing certain complaints of the Carter Oil Company filed with the board protesting the assessments of its properties for purposes of ad valorem taxation. The complaints were consolidated for trial. The dismissal thereof was predicated upon the protestant's failure to comply with a subpoena duces tecum issued by the board.

The cause was originally set for hearing on September 21, 1933, and on said date was continued to September 28th following, by order of the board as follows:

"Due to the insufficiency of information, which was requested of complainant and a subpoena directed to it, the case was continued and set for hearing on Thursday, September 28th, in order to give the complainant an opportunity to comply with the subpoena."

On September 28th, after some further hearing, the board dismissed the complaint of the company for failure to comply with the subpoena duces tecum.

The authority of the board to dismiss a complaint so filed in proper cases is not questioned. Inasmuch, however, as the question has never been before the court, and is a matter of public concern, we have investigated the authorities on the point at considerable length. A statement of the rule that causes in courts may be dismissed in proper cases by reason of the failure of one of the parties to comply with a valid order of the court is found in 18 C. J. 1181, paragraph 90. The rule governing dismissals for failure to produce books and papers in compliance with an order of the court is quoted therefrom as follows:

"A dismissal or nonsuit may be directed where plaintiff fails to produce documents, books, or papers, when ordered to do so, provided such order had been previously obtained, and provided the order is peremptory in its nature. A nonsuit will not be granted, however, because of the nonproduction of books and papers at the trial, under a rule obtained by defendant, where such documents are not shown to have any relevancy to the issues, or where their nonproduction is satisfactorily explained, or where plaintiff is entitled to recover upon other counts in his narration."

The State Board of Equalization is given authority under the provisions of section 21, article 10, of the Constitution to 'equalize the valuation of real and personal property of the several counties in the state. Sections 12656 and 12661, O. S. 1931, provide that any aggrieved person may file a complaint with the board as to any acts of assessments, and provide that the board may consider such complaints by hearing pertinent evidence, and the board is granted authority to compel, by subpoena, the attendance of necessary witnesses and the production of necessary books and papers.

We take it that the State Board of Equalization in such matters, by virtue of its constitutional and statutory authority, is vested with full power and authority to require the production of books and papers which are necessary or properly cognizable as evidence in matters properly before the board. If such authority exists, it appears natural that such authority may be en-

forced, if necessary, by resort to the rule above quoted.

The protestant, while recognizing the rule, seeks to apply the exception thereto that its failure to produce the books, papers, and records commanded to be produced in the subpoena duces tecum is satisfactorily explained. It has not raised the point of relevancy of such documents, and it therefore stands admitted that such records are pertinent to the issues. The gist of protestant's contention is that it would .be harsh and unreasonable to compel it to produce the books, papers, and records in accordance with the command of the board..

The subpoena duces tecum, summarized, commanded the production of all books, papers, and records necessary to show the following:

"(1) A complete and actual investment record of each gasoline plant as of January 1, 1933.

"(2) Complete itemization of all property comprising and used in connection with such plants.

"(3) Complete analysis of the operating earnings and expenses of said plants for each of the calendar years 1928 to 1932, inclusive.

"(4) Actual inventory as of January 1, 1933, of all gasoline, stocks, warehouse stocks, materials and supplies, fuel oil, etc., located at each plant.

"(5) Construction cost of each steel oil storage tank constructed by the Carter Oil Company in Oklahoma between January 1, 1928, and September 1, 1933 (R. 34-35)."

Upon the September 28th hearing, the protestant appeared with several witnesses, but produced none of its original books, papers, or records. It produced, however, certain statements and inventories which it, through its officers and witnesses, presented as correct inventories and abstracts of its books records. These were introduced in evidence. These exhibits were not presented as any part of the protestant's permanent or original records. There does not appear to be a serious effort to comply with any portion of the board's order, unless it may be said that these exhibits contained an inventory of the properties owned by the protestant, and the earnings and expenses of its gasoline plant. No effort is made therein to show the detailed costs to the protestant of the various items of the inventory, nor when they were purchased or installed.

Witnesses for the company testified that the books and records and detail vouchers of the protestant necessary to disclose all of the information commanded by the subpoena duces tecum were voluminous, and to produce them with all vouchers would be physically quite burdensome; that it would require the constant services of four or five accountants for a period of five or six months to examine all of the vouchers and obtain such information. Another witness testified, after qualifying as an expert accountant, that in his opinion the vital information commanded to be produced should be ascertainable within a short period of time, and without undue difficulty or expense. Witnesses for the protestant testified that its bookkeeping methods would not permit it to ascertain the original cost of the various items of its properties without the use of several expert accountants over a period of several months time.

Whatever may be the true facts as to this, the fact remains that no records of the protestant were produced. The subpoena duces tecum was served early in September, before the date of the original hearing. Upon the date of the final hearing the protestant did produce what appears to be an abstract of its records containing 14 items relating to the value of its gasoline plant at Hewitt in Carter county, and other abstracts of its records. These items total $684,882.01, with depreciated reserve claimed $588,152.30, leaving claimed depreciated book value $96,729.71. The valuation of this plant was raised by the State Board of Equalization from $50,000, as returned, to $100,000. This abstract contained grouped or aggregate items such as labor, teaming, and freight, $224,253.06; miscellaneous, $23,322.14; tanks and tank houses, $42,766.40; engines and compressers, $62,073.24; other equipment, $27,134.33; building, $50,229.65; pipe (divided into 17 items) totaling approximately $125,000; fittings, $49,802.60, etc. This so-called abstract of the records contained no information as to the date of acquisition, the original cost, or the present condition of the various items of the property. These abstracts were prepared by protestant's employees during the period of time from the service of the subpoena to the date of the trial, which covered, at most, only some two or three weeks time. Inasmuch as it was presented as a correct statement of the aggregate value of the property involved, it appears reasonable to assume that it was taken from some records kept by the protestant. The records from which these items were taken might

have been produced upon the hearing, for the evidence here does not disclose that it required an analysis of all of the vouchers of the company to obtain this information. This information having been assembled within such a short period of time, it is reasonable to assume that the records from which it was taken were not so voluminous as to preclude their presentation to the board.

It is quite unnecessary for us here to determine whether or not it would be practicable or an unreasonable requirement to compel the production of all of the records of the protestant which might in any way be said to come within the terms of the subpoena duces tecum issued here, and we recognize the principle of law that the command for the production of books, records, and papers should be a reasonable one. Such principles are supported by McDonald v. Ideal Mfg. Co. (Mich.) 106 N. W. 279; Louisiana Farm Bureau Cotton Growers' Co-op. Ass'n v. Bacon et al. (La.) 105 So. 278; Rayne State Bank v. Mouton (La.) 110 So. 340; Bank of Commerce v. Newberry (Wash.) 128 P. 1064; Northern Pacific Railway Company v. Keyes, 91 Fed. 47; National Exchange Bank v. Lubrano (R. I.) 68 Atl. 944, cited by protestant.

We agree with protestant's statement that the rule is one of "reason," and the exception thereto which we have discussed promotes such end. The proper application of the rule, it seems, depends almost invariably upon the facts peculiar to the case.

In the instant case it was the duty of the State Board of Equalization to assess the property of the protestant within the state at its fair cash value. The duty devolves upon the property owner to assess his property at its fair cash value. When controversies arise as to the fair cash value of the property subject to taxation, the State Board of Equalization is given the right to require the production of records, books, and papers from which it may be informed regarding the existence of property and the value thereof. Any records, books, or papers which the property owner has in its possession relating to the existence of, or the value of such property, may be required by the board so that it may be in position to examine the same, and, if it desires, examine or cross-examine the parties thereon.

Such authority of the board, of course, should be exercised within reason, and an effort beyond that point would not be just-ified in law. The object, however, to be attained in such matters is to ascertain the true facts regarding the value of property subject to taxation, and unless it be shown that the Board of Equalization is exercising unreasonable, unnecessary, and unwarranted power in requiring the production of such books, records, and papers, its action should be upheld.

The record here shows that on September 21st, when the cause was originally set for trial, the same was continued for one week for the purpose of affording the protestant an opportunity to produce its books, records, and papers. The record discloses that the company did not protest to the board at that time to the effect that it could not produce the same, nor did it make application for any modification of the terms of the subpoena duces tecum previously served, nor did it request or suggest that any arrangement be entered into whereby the board might otherwise be informed of the contents of its records. We observe the remark of protestant's counsel that the records of the company are open to examination by the board or its employees, but no such suggestion appears to have been made prior to the dismissal. We conclude that the record fails to show an effort in good faith on the part of the protestant to comply with the order of the board in producing its records, books, and papers, nor does it show a justifiable excuse for such failure.

The order of the State Board of Equalization is therefore sustained.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS CORN, and GIBSON, JJ., concur. RILEY, J., absent.