CONTINENTAL OIL COMPANY, a corporation, Petitioner,

v.

The STATE BOARD OF EQUALIZATION et al., Respondents,

LVO Corporation, a corporation, and Occidental Petroleum Corporation, a corporation, Intervenors.

No. 45231.

Supreme Court of Oklahoma.

Feb. 29, 1972.

Smith, Leaming & Swan, Hal D. Leaming, Oklahoma City, John Wimbish, Ponca City, for petitioner.

Brown, Verity, Brown & Baker, Geo. L. Verity, Lin Patterson, Oklahoma City, T. E. Waibel, Tulsa, for intervenors.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for respondent.

JACKSON, Justice.

This litigation was precipitated in 1971 when the Legislature raised the gross pro- duction tax on oil and gas from 5% to 7%. 68 O.S.1971, Sec. 1001(a). Continental Oil Company (Petitioner) and LVO Corpora- tion and Occidental Petroleum Corpora- tion, Intervenors (hereinafter collectively called Continental), paid the 7% gross pro- duction tax on their production under pro- test and filed complaints with the State Board of Equalization requesting the Board to take testimony to determine whether the 7% gross production tax levy is greater than the general ad volorem tax would be on the properties of such produc- ers in the districts where situated. 68 O. S.1971, Sec. 1001(h).

Continental was not immediately advised by the Board that a hearing would be con- ducted and filed this original action pray- ing a writ of mandamus to compel the hearing. The Board set hearing dates and the applications for writs of mandamus are now moot but we have assumed jurisdic- tion in order to be of assistance in connec- tion with several tantalizing questions which have been presented. We think it may be helpful if we dispose of these ques- tions in the order in which they were presented.

■ Counsel for the Board states that the Board met on June 28, 1971, as re- quired by 68 O.S.1971, Sec. 2463, and per- formed its tax assessment duties and con- tends that it has no jurisdiction to hear Continental's complaint. Our attention is invited to Prairie Oil and Gas Co. v. Cruce, et al., 45 Okl. 774, 147 P. 152, Mc- Gannon v. State, 33 Okl. 145, 124 P. 1063, and Champlin v. Oklahoma Tax Commis- sion, 163 Okl. 185, 20 P.2d 904. These cas- es simply stand for the proposition that when the Board has completed its statutory assessment duties at the time and in the manner required by the statutes it may not at a later time reopen the matter and as- sess an additional tax, in the absence of fraud or omission. Those cases are not in point. Here Continental has invoked the jurisdiction of the Board to conduct a hearing under the provisions of Sec. 1001 (h) supra.

■ The Attorney General contends on behalf of the State Board of Equalization that the title of the Gross Production Tax Act "* * * Providing for hearings before Equalization Board and appeals from same * * * does not reflect the power vested in the Board of Equalization to—

"Take testimony to determine whether the taxes herein levied are greater, or less, than the general ad·valorem tax for all purposes would be. * * *. The Board shall have the power and·it shall be its duty to raise or lower the rates herein levied to conform thereto."

■ The constitutional provision that the subject of an act must be clearly expressed in its title does not require that the title contain in abstract of the contents of the act. The title is sufficient if it expresses the purpose and object of the act in general terms. Jackson v. Yocham, 206 Okl. 531, 244 P.2d 1134. The purpose of Art. 5, Sec. 57, Okl.Const., is to prevent the Legislature from including in one act two·or more unconnected subjects. We find the title sufficient.

■ In the Attorney General's brief it is argued that a tax cannot be levied retroactively, and since the Legislature established a gross production tax rate at 7% the rate is fixed until after a hearing and decision by the State Board of Equalization and final decision by this court on appeal, if appealed. Section 1001(h), supra, authorizes the payment of the tax under protest, and further provides in effect that if the tax is not paid under protest the taxpayer will not be heard to complain. The authorization to pay under protest would have no meaning unless it is possible for the taxpayer to derive a benefit therefrom. The tax is not imposed retroactively. The Board, upon complaint by the taxpayer, is authorized to conduct a hearing and determine the rate. If the rate is lowered following the hearing the effective date of the new rate is fixed at the time the tax is paid under protest.

■ The Attorney General states that "Section 1001(h) is obsolete" because it came into the law earlier than Section 1001(a). Both of these subsections, (a) with slight change, were reenacted in 1971. Subsection 1001(h) since 1916 has provided that the taxpayer will not be heard to complain after the tax has been collected and distributed. We considered that problem in *Continental Oil Company vs. Oklahoma Tax Commission*, Okl., 494 P.2d 650.

■ The parties agreed that the Board would make discovery requests of Continental. On October 26, 1971, interrogatories were submitted to Continental and Continental submitted its answers on November 15, 1971. At a hearing before the Board on December 15, 1971, the Attorney General filed a motion complaining to the Board that Continental had not fully answered its interrogatories and requested the Board to enter an order to compel Continental to answer the interrogatories and supply the information and documents requested. After argument the Board entered an order directing Continental to supply information which the Board considered necessary for it to make a proper evaluation of Continental's property on an ad valorem basis. The information requested was itemized in the order and consists of six or seven pages.

Continental complains that much of the information requested is not in its possession, and that much of the information is obtainable by the Board from the Oklahoma Tax Commission and the Oklahoma Corporation Commission. Continental further contends that much of the information requested is not necessary to a proper evaluation of its property for taxation based upon value. It states it "will furnish the Board such of the information as is in its possession or control and may be furnished without undue and unreasonable effort and expense. As to all other information, Petitioner (Continental) restates its offer of October 18, 1971, to open its records to the Board's attorneys and experts and permit them to make copies of such information and documents as they desire."

Our attention is invited to Administrative Discovery Procedures, 75 O.S.1971,

301 et seq. (particularly Sec. 315); Depositions, 12 O.S.1971, Secs. 383, 390, 434, 447 and 549; and 68 O.S.1971, Secs. 2443–2455 (annual assessment of railroad and public service corporations) with emphasis upon Section 2455.

Under Article 10, Section 21, Oklahoma Constitution, it is the mandatory duty of the State Board of Equalization to assess all railroad and public service corporation property. The same duty is imposed upon the Board by 68 O.S.1971, Sec. 2443. Sections 2444 et seq., impose duties upon railroad and public service corporations to provide the Board with schedules of their property and other information considered necessary to assess their properties upon an ad valorem basis. "The returns of railroad and public service corporations shall not be conclusive as to the value or amount of any property." 68 O.S.1971, Sec. 2455, supra. The Board is given the power to compel the production of books, records and papers of any such company. Sec. 2455.

Under the Constitution and statutory law railroad and public service corporations are assessed on an ad valorem basis by the State Board of Equalization. The Board has no choice; it must determine values and in order to do so it must have information. The Legislature has given the Board strong inquisitorial powers in order that it may properly perform this duty. Sec. 2455. In the instant case Continental initiated this hearing and the burden is upon it to provide the Board with sufficient information so that it may determine that the gross production tax of 7% is greater than Continental would be required to pay if taxed on an ad valorem tax equivalent, as well as the amount of the difference. There is no need here for the Board to exercise *strong* inquisitorial powers. If Continental does not present evidence that is adequate for the Board to determine values with reasonable accuracy it has not proved its case. Of course the Board may present evidence. This is not a case under Sec. 1001(h) where the Board is attempting to increase the tax above 7%.

In Carter Oil Co. v. State Board of Equalization (1935), 172 Okl. 54, 45 P.2d 112, Carter protested the Board's assessment of ad valorem taxes on Carter's gasoline plant and steel storage tanks. Carter failed to comply with a subpoena duces tecum issued by the Board. The Board concluded that without compliance with the subpoena duces tecum that the evidence was insufficient to sustain the tax protest. In our syllabus we held:

"Where a property owner, protesting his assessment before the State Board of Equalization, without satisfactory explanation or justifiable excuse, fails or refuses to comply with a subpoena duces tecum to produce books and records relating to the existence, character, and value of its property involved in the protest, that board has power and authority in a proper case to dismiss the protest." (Cited in 144 A.L.R. 388, 4 A.L.R.2d 373 and 23 A.L.R.2d 868)

In the body of the opinion in that case we were careful to point out that Carter "has not raised the point of relevancy of such documents," and we concluded that the records sought were pertinent to the issues. In that case we further said:

" * * * we recognize the principle of law that the command for the production of books, records, and papers should be a reasonable one. * * *.

"We agree with protestant's statement that the rule is one of 'reason,' and the exception thereto which we have discussed promotes such end. The proper application of the rule, it seems depends almost invariably upon the facts peculiar to the case.

* * * * * *

"Such authority of the board [to require the production of books and records], of course, should be exercised within reason, an effort beyond that point would not be justified in law."

In the instant case the Board by its order has directed Continental to file copies of its records, books and papers which the Board considers pertinent and relevant to the value of Continental's properties and which the Board assumes are in Continental's possession or control. The Carter case stands for the proposition that a tax protestant before the State Board of Equalization must, upon demand, produce such records that are in its possession if they are pertinent and relevant to the value of its properties, or satisfactorily explain why they cannot be produced. In *Carter* we said that by virtue of constitutional and statutory authority the Board is vested with full power and authority to require the production of books and papers which are necessary or properly cognizable as evidence in matters properly before the Board.

The Board has also ordered Continental to acquire and file information concerning oil fields wherein it has production or producing oil wells; such as, name and area of the field, history and total prior production from the field, porosity and average thickness of the oil sand, and potential of the field whether from pumping or water flooding methods. Continental complains that it does not have this information and that this information is as readily available to the Board as it is to Continental. The Carter case did not answer the question of whether, under discovery procedures, the tax protestant may be required to produce information that is not in its possession. In the Carter case we quoted with approval from 18 C. J. § 90, p. 1181, as follows:

" * * * (A) nonsuit will not be granted, however, because of the nonproduction of books and papers at the trial, under a rule obtained by defendant, where such documents are not known to have any relevancy to the issues, or where their nonproduction is satisfactorily explained, or where plaintiff is entitled to recover upon other counts in his narration."

In the instant case Continental has not produced information not in its possession, as ordered. Its failure to produce this information prior to an evidentiary hearing will not be regarded as ground for nonsuit as a matter of law. It may be that Continental will produce other evidence which will enable the Board to properly evaluate its oil and gas leases and other producing properties. We assume that direct and cross examination of expert witnesses will disclose the pertinency of the information requested and whether such information is essential to a determination of the value of the various properties. The burden is upon Continental to supply facts from which the expert witnesses and the Board may draw reasonably accurate conclusions as to the value of all of its various properties.

In Sinclair Prairie Oil Co. v. State (1935), 174 Okl. 109, 50 P.2d 150, we said that no particular method of evaluating is prescribed by the Constitution or the Statutes for the guidance of the Board of Equalization in determining the value of property, and that the method used is immaterial so long as it does not appear that the value so determined and fixed by the Board exceeds the fair cash value of the property. The same rule has been applied in establishing public utility rates. General Telephone Company of Southwest v. State, Okl., 484 P.2d 1304. The rule must work both ways so that the methods used by Continental to determine values is immaterial so long as the methods used can be depended upon to accurately determine the fair cash value of the properties in question.

The relief now sought by Continental in this proceeding is a writ of mandamus directing the State Board of Equalization to commence an evidentiary hearing at an early date and proceed with such hearing with diligence. Continental is entitled to this relief, but being confident the Board will proceed with all reasonable dispatch

we think it is unnecessary to issue the writ.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, LAVENDER, McINERNEY and BARNES, JJ., concur.

HODGES, J., concurs in part and dissents in part.