Dear Representative Blackwell,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does it constitute a violation of the statutory prohibition against dual office holding for a person to hold a position on the Governor's Cabinet and to be appointed to fill the unexpired term of the position of State Treasurer?
 2. Under current law, does the State Treasurer have the authority to cause information to be prepared for consideration by the State Board of Equalization regarding financial and revenue information, and does the State Board of Equalization have the authority to consider such information, when specific duties for such tasks are imposed by statute upon the Office of State Finance and the Oklahoma Tax Commission?
 3. May the State Treasurer engage the services of state employees who are employed by the Office of State Finance or by the State Treasurer to perform functions related to the requirements imposed by Article X, Section 23 of the Oklahoma Constitution with respect to revenue estimation by the State Board of Equalization?
 4. If the State Treasurer causes revenue estimates to be prepared for consideration by the State Board of Equalization, is there a conflict of interest or other provision of law that prohibits the State Treasurer from voting as a member of the Board of Equalization upon matters related to that information?
¶ 1 Your questions involve a number of different but related subjects, including Oklahoma's statutory provision against dual office holding, statutory provisions regarding the creation of the Governor's Cabinet, the statutory and constitutional responsibility of the State Board of Equalization ("Board") to certify accrued revenues and ensure a balanced annual budget, the authority of the State Treasurer and the potential for a conflict of interest on the part of the State Treasurer serving on the Board.
 Oklahoma's Prohibition Against Dual Office Holding
¶ 2 You first ask whether it constitutes a violation of the prohibition against dual office holding for a person to hold a position on the Governor's Cabinet and to be appointed to fill the unexpired term of State Treasurer. We begin by noting that51 O.S. Supp. 2004, § 6[51-6], known as the dual office holding prohibition, prohibits state officers and deputies from holding other state offices or being the deputy of any other state office. That statute provides in pertinent part:
 A. Except as may be otherwise provided, no person holding an office under the laws of the state and no deputy of any officer so holding any office shall, during the person's term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the state.
Id. The Legislature codified 26 specific exceptions to the dual office holding prohibition, none of which apply here. See51 O.S. Supp. 2004, § 6[51-6]. You question whether serving as both State Treasurer and as a member of the Governor's Cabinet constitutes dual office holding.[1] To answer your question, we must determine what constitutes an "office" and what constitutes a "deputy" under Oklahoma law.
 The Definition Of The Term "Officer" ¶ 3 Oklahoma City v. Century Indemnity, Co., 62 P.2d 94
(Okla. 1936) is the leading Oklahoma case addressing the definition of the term "officer" under state law. CenturyIndemnity stated that for a person to be an "officer," (1) the "position must be created or authorized by law;" (2) "certain definite duties [must be] imposed by law on the [officer];" and (3) the duties must involve "the exercise of some portion of the sovereign power." Id. at 97.
¶ 4 Section 10.3(B) of Title 74 sets forth the Governor's authority to create a cabinet system for the executive branch of state government. The part of that statute pertinent to your inquiry reads:
 The Governor shall appoint, with the advice and consent of the Senate, a Secretary to head each cabinet area. The Secretary appointee for the cabinet area consisting of the Oklahoma Department of Veterans Affairs and other related veterans entities shall be an honorably discharged veteran as defined by Title 72 of the Oklahoma Statutes and be eligible to receive benefits from the United States Department of Veterans Affairs. A cabinet Secretary may be appointed as a position funded by the Office of the Governor from funds available to that office, or appointed as a cabinet Secretary from among the agency heads within the cabinet area. The cabinet Secretaries shall:
 1. Advise the Governor of any policy changes or problems within the area they represent;
 2. Advise the entities represented of any policy changes or problems as directed by the Governor; and
 3. Coordinate information gathering for the Legislature as requested.
2005 Okla. Sess. Laws ch. 428, § 1(B) (amending 74 O.S. Supp.2004, § 10.3[74-10.3](B)) (emphasis added).[2]
¶ 5 A reading of this statute demonstrates that the function of a cabinet Secretary is to serve in an advisory capacity to the Governor and to the agencies he or she represents, and to coordinate information gathering for the Legislature. Id. As such, a cabinet Secretary's duties do not involve "some portion of the sovereign power." Century Indemnity, 62 P.2d at 97.
¶ 6 In Attorney General Opinion 00-54 we previously held that the functions of cabinet secretaries are "no more than giving opinions and performing clerical work." Id. at 279. Attorney General Opinion 00-54 did not address the term "officer" in the context of dual officer holding. Rather, it considered whether the Secretary of Commerce was an officer for purposes of § 2.2(B) of Title 74, which prohibits appointment of a rejected nominee to a cabinet position on an acting or interim basis. Id. at 279-81. We specifically concluded in that Opinion that the exercise of sovereign power is different from the mere statement of opinion as sovereign power "implies command and not entreaty."Id. at 279 (quoting In re Initiative Petition No. 364,930 P.2d 186, 194 (Okla. 1996)). We noted that sovereign power includes such things as police power, eminent domain and taxation and concluded that "[w]hile the general functions that the Legislature has given Cabinet secretaries may be duties, they do not involve the exercise of any of the sovereign power of the State of Oklahoma[.]" Id.
¶ 7 We concluded that although cabinet Secretaries are generally not officers, we must look to the specific position on a case-by-case basis to determine whether any cabinet Secretary has been given authority to exercise sovereign power. Id. We found that the Secretary of Commerce was an officer for purposes of 74 O.S. 1991, § 2.2[74-2.2](B), as the Secretary of Commerce had been given sovereign power as an ex officio member of the Native American Cultural and Educational Authority of Oklahoma.Id. at 279-80. We noted that "[t]his authority has the power to issue revenue bonds, see 74 O.S. Supp. 1999, § 1226.4[74-1226.4](7), which involves the exercise [of] sovereign power." Id. at 280.
¶ 8 We find no specific statutory duties with regard to the Secretary of Finance and Revenue. Thus, the cabinet Secretary has no duties which involve the exercise of sovereign power. As the position of Secretary of Finance and Revenue is not an office, there is no dual office holding violation in holding both that position and a state office, such as State Treasurer.
 The Definition Of The Term "Deputy"
¶ 9 Cabinet secretaries do not meet the definition of "deputy" for purposes of the dual office holding prohibition. The common usage of the term "deputy" is "a person appointed . . . as the substitute of another and empowered to act for him, in his name, or in his behalf . . . a second in command or an assistant who usu[ally] takes charge when his superior is absent." Webster's Third New International Dictionary 607 (3d ed. 1993). In determining whether a deputy is a public officer the Oklahoma Supreme Court stated, "[t]he business and object of a deputy is to perform the duties of his principal. . . . [A] deputy is ordinarily regarded as the agent or servant of his principal."Century Indemnity, 62 P.2d at 97 (citations omitted). Under this definition a cabinet Secretary is not a deputy, as the Secretary does not act on behalf of another or serve as the agent of a principal. He or she simply serves as an advisor to the Governor. 74 O.S. 2001, § 485[74-485](B).
¶ 10 Thus, we conclude it does not constitute a violation of the prohibition against dual office holding for a person to hold a position as Secretary of Finance and Revenue on the Governor's Cabinet and to fill the unexpired term of the position of State Treasurer.
 The State Board Of Equalization
¶ 11 Your second and third questions relate to whether the State Treasurer may supply information regarding revenue estimates to the Board, whether the Board may consider that information in fulfilling its duties to certifying accrued revenues and whether the State Treasurer may use state employees, employed by the Treasurer and the Office of State Finance ("OSF"), to prepare the information.
¶ 12 Your questions require an explanation of the powers and duties of the State Board of Equalization. Article X, Section 21
of the Oklahoma Constitution creates the Board and provides for its duties:
 A. There shall be a State Board of Equalization consisting of the Governor, State Auditor, State Treasurer, Lieutenant Governor, Attorney General, State Inspector and Examiner and President of the Board of Agriculture. The duty of said Board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law, and they shall assess all railroad and public service corporation property.
 B. Should the Offices of State Examiner and Inspector and State Auditor be consolidated in the Office of State Auditor and Inspector, the State Auditor shall be replaced as a member of the State Board of Equalization by the State Auditor and Inspector and the Superintendent of Public Instruction shall be added as a member thereof. Should the offices not be so consolidated, the membership shall remain the same as provided in subsection A of this section and the Superintendent of Public Instruction shall not be added to the membership.
Id. (footnote omitted).[3] The membership, powers and duties of the Board are also set forth by statute. See 68 O.S.2001, § 2864[68-2864].
¶ 13 The Board also has a duty to ensure a balanced annual budget and it is that aspect of the Board's constitutional duty which has prompted your inquiry. The portion of Okla. Const. art. X, § 23, requiring a balanced budget was referred to the people for their approval or rejection in 1985 through H.J. Res. 1005. That amendment was adopted by State Question 587, Legislative Referendum 251, at an election held April 30, 1985.[4]
¶ 14 Section 23 of Article X of the Oklahoma Constitution prohibits the State from creating or authorizing the creation of any debt or obligation, and prevents the State from paying any deficit against the State or any department, institution or agency. Section 23 also establishes certain procedures for ensuring a balanced annual budget. Those procedures require the Board to meet at a certain time prior to the convening of each regular session of the Legislature and to "certify the total amount of revenue which accrued during the last preceding fiscal year to the General Revenue Fund and to each Special Revenue Fund appropriated directly by the Legislature." Okla. Const. art. X, §23(1). The Board is mandated to:
 [F]urther certify amounts available for appropriation which shall be based on a determination, in accordance with the procedure hereinafter provided,
of the revenues to be received by the state under the laws in effect at the time such determination is made, for the next ensuing fiscal year, showing separately the revenues to accrue to the credit of each such fund of the state appropriated directly by the Legislature.
Id. (emphasis added).
¶ 15 The "procedure hereinafter provided" referenced in Section 23(1) includes the requirement that the "certification shall be filed with the Governor, the President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives." Okla. Const. art. X, § 23(2). The Legislature is prohibited from making an appropriation of any money until the certification is made and filed. Id. The Legislature may, however, "enact laws to provide for additional revenues or a reduction in revenues, other than ad valorem taxes, or transferring the existing revenues or unappropriated cash on hand from one fund to another, or making provisions for appropriating funds not previously appropriated directly by the Legislature." Id.
¶ 16 If the Legislature enacts such laws, the Board must "make a determination of the revenues that will accrue under such laws and ninety-five percent (95%) of the amount of any increase or decrease . . . shall be added to or deducted from the amount previously certified." Id. The Board is mandated to "file the amount of such adjusted certification, or additional certification for funds not previously [certified] with the Governor, with the President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives." Id.
¶ 17 Section 23(3) of Article X requires the Board to "meet within five (5) days after the monthly apportionment in February of each year, and . . . adjust the certification, based upon the most current information available, and determine the amount of funds available for appropriation for that legislative session."
¶ 18 Section 23(4) provides that "[s]urplus funds or monies shall be any amount accruing to the General Revenue Fund of the State of Oklahoma over and above the itemized estimate made by the State Board of Equalization." The State Treasurer has a specific duty with regard to this fund, as all surplus funds or monies accruing after July 1, 1985, "shall be placed in a Constitutional Reserve Fund by the State Treasurer until such time that the amount of said Fund equals ten percent (10%) of the General Revenue Fund certification for the preceding fiscal year." Okla. Const. art. X, § 23(5).
¶ 19 The balanced budget provision contains another directive to the State Treasurer at Section 23(10) of Article X, which requires the Legislature to provide a method whereby appropriations shall be divided to prevent obligations being incurred in excess of the revenue to be collected. The Legislature:
 [S]hall provide that all appropriations shall be reduced to bring them within revenues actually collected, but all such reductions shall apply to each department, institution, board, commission or special appropriation made by the State Legislature in the ratio that its total appropriation for that fiscal year bears to the total of all appropriations from that fund for that fiscal year; provided, however, that the Governor may in his discretion issue deficiency certificates to the State Treasurer for the benefit of any department, institution or agency of the state.
Id. The State Treasurer shall then issue warrants "for the payment of such claims as may be authorized by the Governor."Id.
¶ 20 Oklahoma Constitution Article X, Section 23a specifically requires the State Treasurer to deposit in a sinking fund "[a]ny surplus which has accrued or may hereafter accrue to the General Revenue Fund." Id. This money is "to be used solely for the purpose of paying the principal and interest of the outstanding and unpaid bonded indebtedness of the State of Oklahoma." Id.
That section provides that the "State Treasurer shall be the custodian of said Sinking Fund and shall apply the monies and securities placed to the credit of said fund to the payment of the principal and interest of the state's bonded indebtedness."Id.
¶ 21 Having established the general requirements of the Board to ensure a balanced budget we now turn to your specific questions.
 Analysis Of 62 O.S. 2001, § 41.7b[62-41.7b]
¶ 22 You ask whether, in light of 62 O.S. 2001, § 41.7b[62-41.7b], the State Treasurer may present information to the Board for its consideration in performing its function of certifying accrued revenues and amounts available for appropriation. Section 41.7b provides, in pertinent part:
 A. In accordance with duties assigned to the State Board of Equalization in Section 23 of Article X of the Constitution of the State of Oklahoma, agencies responsible for the collection of monies deposited to the credit of the General Revenue Fund and each of the Special Revenue Funds shall, upon request of the Director of State Finance, provide the Director in the manner and form established by the Director, an itemized estimate of funds expected to accrue to the General Revenue Fund and each of the Special Revenue Funds for the ensuing fiscal year. Each of these agencies must also provide to the Director of State Finance, as requested, a written explanation of the methodology and relevant assumptions used in developing the revenue estimates submitted in compliance with this section, a statement of prior year actual revenue collections and a projection of current year revenue collections.
Id. (emphasis added). As shown by Section 41.7b, agencies responsible for the collection of monies deposited to the General Revenue Fund and each of the Special Revenue Funds are required to provide the Director of State Finance, upon request, an itemized estimate of funds expected to accrue for the next fiscal year. This section also requires these agencies to provide to the Director of State Finance other information as requested.
¶ 23 Subsections B and C of Section 41.7b include additional requirements for the Oklahoma Tax Commission with regard to providing information to the Director of State Finance, President Pro Tempore of the Senate and Speaker of the House of Representatives. Those subsections state:
 B. In addition to providing the information listed above, the Oklahoma Tax Commission shall also provide to the Director of State Finance a comprehensive economic report no later than two weeks prior to each of the meetings of the State Board of Equalization pursuant to paragraphs 1 and 3 of Section 23 of Article X of the Constitution of the State of Oklahoma. The report shall include a summary of recent national and state economic performance and a forecast of national and state economic performance for both the current and the upcoming fiscal year. This report shall be considered a basis upon which the itemized revenue estimates of the Commission are developed. The report shall include an analysis of the relative accuracy of the economic forecast on which the previous and current fiscal years' revenue estimates were based.
 C. The Tax Commission shall also provide all estimates, explanations, statements, projections, reports and other documents required by this section to the President Pro Tempore of the Senate and the Speaker of the House of Representatives at the same time that such documents are provided to the Director of State Finance.
Id. (emphasis added).
¶ 24 Although Section 41.7b requires certain agencies to provide information to the Board, it does not limit the Board to considering only the information supplied by those agencies. In fact, as discussed above, the constitutional provision establishing the procedures for ensuring a balanced annual budget, Okla. Const. art. X, § 23, does not specify how the Board is to obtain the information necessary to certify amounts available for appropriation. Section 23(1) provides that the Board "shall further certify amounts available for appropriation which shall be based on a determination, in accordance with the procedure hereinafter provided, of the revenues to be received by the state under the laws in effect at the time such determination is made, for the next ensuing fiscal year, showing separately the revenues to accrue to the credit of each fund of the state appropriated directly by the Legislature." Id. The Supreme Court held that this constitutional requirement that the Board "shall certify the total amount of revenue which accrued to the General Revenue Fund and each special fund during the last preceding fiscal year is clear, mandatory, and unambiguous."Smith v. Bd. of Equalization, 630 P.2d 1264, 1266 (Okla. 1981).
¶ 25 As discussed above, the "procedure hereinafter provided," referenced in Section 23(1) of the Oklahoma Constitution, refers to the procedures set out for determining the revenues received by the State for the next ensuring fiscal year. There are no procedures governing how information necessary for this determination is to be supplied to the Board for consideration.
¶ 26 The Oklahoma Supreme Court held that the Board is procedurally governed by the Administrative Procedures Act (75O.S. 2001 Supp. 2004, §§ 250-323). Tulsa Classroom TeachersAss'n v. State Bd. of Equalization, 601 P.2d 99, 101 (Okla. 1979). The Board adopted administrative rules in 1991 for the certification of state funds. OAC 255:10-3-3 provides:
 (a) Estimate of Revenues. As mandated in Article X, Section 23 of the Oklahoma Constitution, the Board shall make an itemized estimate of the revenues to be received by the State under the laws in effect at the time such estimate is made for the next ensuing fiscal year, showing separately the revenues to accrue to the credit of the General Revenue Fund and each special fund of the State. When the Legislature enacts new laws which provide additional revenue or a reduction in revenue, it shall be the duty of the Board to make an adjustment in the estimate of the revenues which will accrue by reason of the new statutes.
 (b) Certification of funds meeting date. As mandated in Article X, Section 23 of the Oklahoma Constitution, the Board shall meet not more than forty-five (45) days or less than thirty-five (35) days prior to each regular session of the Legislature to make an itemized estimate of revenues to be received by the State in the ensuing fiscal year.
Id. Again, these provisions mandate that the Board make an itemized estimate of revenues, an adjustment when the Legislature enacts new laws which provide additional revenue or which result in a reduction in revenue and meet at a certain time. The rules do not provide a specific method by which information is to be supplied to the Board for its consideration in making the necessary estimates.
¶ 27 The Legislature implemented statutory requirements for the Board. In the Ad Valorem Tax Code at Title 68, the Legislature set forth certain duties, powers and authority of the Board in the context of the Board's valuation of railroads, air carriers and public service corporations. 68 O.S. 2001, § 2859[68-2859](B). The Legislature specifically provided:
 It shall be the duty of the State Board of Equalization, with the assistance of the Oklahoma Tax Commission, to do all things necessary to enable it to assess and value all taxable property of railroads, air carriers and public service corporations, discover omitted property, and determine the taxable status of any property which is claimed to be exempt from ad valorem taxation for any reason.
Id.
¶ 28 The Legislature gave the Board the power "to administer oaths, to conduct hearings, and to compel the attendance of witnesses and the production of the books, records and papers of any person, firm, association, or corporation; and to enter any business or commercial premises and inspect the property of the taxpayer." Id. § 2859(C). See also Carter Oil Co. v. State Bd.of Equalization, 45 P.2d 112, 113 (Okla. 1935) (acknowledging the Board's power and authority when controversies arise as to the fair cash value of property subject to taxation, "to require the production of books and papers which are necessary or properly cognizable as evidence in matters properly before the board"). This is further support that the Board is not limited to the information supplied through the provisions of Section 41.7b of Title 62.
¶ 29 Therefore, we conclude that the Board is not restricted in the manner that it receives information to fulfill its duty to certify amounts available for appropriation. While the Legislature has placed duties on agencies responsible for the collection of monies to provide information to the Board, it has not determined this to be the exclusive means by which the Board receives information. We conclude that Section 41.7b of Title 62 is not the exclusive method for providing information to the Board to allow it to fulfill its constitutional duty to certify accrued revenues and to certify amounts available for appropriation. The Board may consider information supplied through other sources.
 Duties Of The State Treasurer
¶ 30 You ask, in essence, whether it is consistent with the duties of the State Treasurer for the Treasurer to perform functions related to the balanced budget requirements imposed by Okla. Const. art. X, § 23. You suggest that the State Treasurer, with the assistance of his or her employees and employees of OSF, is preparing or planning to prepare financial and revenue information to present to the Board for its consideration in fulfilling its constitutional duty to certify accrued revenues.
¶ 31 We initially note that the State Treasurer is a voting member of the Board. As such, he or she has the duty to ensure a balanced annual budget. Okla. Const. art. X, § 23. As we concluded above, the Constitution does not restrict how the Board members obtain the information necessary to make this equalization determination. There is no prohibition which would restrict the State Treasurer from preparing the financial and revenue information necessary to ensure that he or she cast a fully informed vote. This same authority lies with any Board member. Thus, the State Treasurer may present, and the Board may consider, financial information relevant to the Board's duty to certify accrued revenues and to certify amounts available for appropriation.
¶ 32 Furthermore, the State Treasurer has unique responsibilities which warrant his or her participation in the budget balancing process. The position of State Treasurer was created by the Oklahoma Constitution as part of the Executive Department. Oklahoma Constitution Article VI, Section 1(A) establishes the State Treasurer as one of the officers in whom the executive authority of the State is vested and provides that the State Treasurer "shall perform such duties as may be designated in this Constitution or prescribed by law." Id. The Constitution itself does not establish specific duties for the State Treasurer. Statutorily, the State Treasurer is charged with custody of the State's money. 74 O.S. 2001, § 362[74-362]. Referring to the State Treasurer, Section 362 provides, "[h]e shall have charge of and safely keep all public monies which shall be paid into the State Treasury, and pay out the same as directed by law." Id.
¶ 33 Moreover, the Office of State Treasurer is directly affected by the balanced budget process. As shown above, Okla. Const. art. X, § 23(5) assigns the State Treasurer a specific duty to place surplus funds in a Constitutional Reserve Fund. The State Treasurer is also required to issue warrants for the payment of claims to each department, institution, board, commission or special appropriation when appropriations are reduced. Okla. Const. art. X, § 23(10). Additionally, Okla. Const. art. X, § 23a requires the State Treasurer to be the custodian of a sinking fund to which surplus revenues are deposited.
¶ 34 Generally, a state officer has, by implication, "such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." Marley v. Cannon,618 P.2d 401, 405 (Okla. 1980). Although the State Treasurer does not have specific statutory duties with regard to presenting information to the Board, the duties of the Treasurer, with regard to state revenues and the budget balancing process specifically, are broad. We therefore conclude that it is within the authority of the State Treasurer to participate in preparing information relevant to the certification of state revenue to be presented to the Board.
¶ 35 You also ask whether the State Treasurer may engage the assistance of employees of the State Treasurer's Office to perform functions related to the requirements of Okla. Const. art. X, § 23. Title 62 O.S. 2001, § 89.5[62-89.5](B) empowers the State Treasurer to hire employees and fix their duties. That statute provides:
 The State Treasurer shall appoint and fix the duties and compensation of employees, not otherwise prescribed by law, necessary to perform the duties imposed upon the Office of the State Treasurer by law.
Id.
¶ 36 Thus, we conclude that, as the preparation of financial information to be supplied to the Board is a proper function of the State Treasurer, it is likewise also a proper function of those employed by the Treasurer. Therefore, the State Treasurer and his or her employees may prepare financial information relevant to the Board's duty to certify revenues and the Board may consider that evidence in performing its constitutional duty.
 Use Of Employees From The Office Of State Finance
¶ 37 In a related question, you ask whether the Treasurer may engage the services of employees of OSF to participate in preparing information for the Board. In a broader sense, you question whether the State Treasurer may transfer employees from OSF to the State Treasurer's Office to perform functions relating to balancing the budget.
¶ 38 Initially, we find no authority for the State Treasurer to mandate that employees who are not under his or her supervision or control perform duties related to his or her office. Furthermore, we find no authority on the part of the State Treasurer to unilaterally transfer employees from OSF to the State Treasurer's Office. We further find that it is not within the implied powers of the State Treasurer to direct the employment of state employees from other state agencies, as such authority cannot be fairly implied from the State Treasurer's powers. Therefore, the State Treasurer does not have the authority to require employees of OSF to assist the State Treasurer in performing functions related to balancing the budget or to unilaterally transfer those employees to his or her agency.
¶ 39 Having said this, we note that the Legislature has established a mechanism for the interchange of state employees between state agencies. This program is known as the State Personnel Interchange Program. See 74 O.S. 2001, § 840-3.9-840-3-15. The Legislature articulated in pertinent part:
A. It is the policy of this state that:
 1. State agencies in all branches of state government shall provide, whenever possible, such services as shall be required by other entities of state government; and
 2. All entities of state government shall provide required services without charge or, when it is not possible to provide such services without charge, on a contractual basis.
Id. § 840-3.10. In recognition of this policy the Legislature directed "[t]he Administrator of the Office of Personnel Management . . . to establish programs to facilitate the interchange of employees among state government entities . . . and to adopt rules necessary to carry out the provisions of the State Personnel Interchange Program." Id. § 840-3.11.
¶ 40 The procedures enacted by the Legislature require that personnel interchange assignments be temporary, and that individuals are assigned only upon their freely given written consent and by mutual agreement of the sending and receiving agency. Id. § 840-3.13(A), (B). The Office of Personnel Management has implemented administrative rules that require employee interchanges to be by agreement if the receiving agency does not reimburse the sending agency, and by contract if the receiving agency reimburses the sending agency. OAC 530:10-17-52
(1996).
¶ 41 Therefore, if an employee of OSF voluntarily agrees to be temporarily assigned to the State Treasurer's Office, and if both the Director of State Finance and the State Treasurer agree to the assignment, an OSF employee could be temporarily assigned to the State Treasurer to perform functions relating to balancing the budget. Furthermore, there is no provision which would prohibit the Director of State Finance from authorizing his or her employees to assist the State Treasurer in the process of preparing financial information. Title 62 O.S. 2001, § 41.7b[62-41.7b],
discussed above, requires certain agencies to provide information regarding the estimate of funds expected to accrue to the General Revenue Fund and each of the Special Revenue Funds to the Director of State Finance upon request of the Director. Thus, it would certainly be within the scope of employment of an employee of OSF to assist in the preparation of financial information to be supplied to the Board.
¶ 42 We further note that the Governor, who is also a voting member of the Board (see Okla. Const. art. X, § 21(A)), may seek the assistance of the Director of State Finance in matters relating to the Governor's duties on the Board. 62 O.S. 2001, §41.4[62-41.4]. Oklahoma law specifically provides that the Director of State Finance works under the direction of the Governor. Id.
Under the Governor's direction, the Director of State Finance has the following powers:
 (1) to prepare the budget document and assist in the drafting of legislation to make it effective, (2) to make field surveys and studies of governmental agencies, looking toward economy and greater efficiency, (3) to make allotments to control expenditures, (4) to authorize transfers of appropriation authorized by law, (5) to study accounting and other reports rendered by the Central Accounting and Reporting Division, (6) to enter into agreements with the United States Secretary of the Treasury for the purpose of implementing the Cash Management Improvement Act of 1990 (Public Law 101-453), and (7) to aid the Governor in the economical management of state affairs.
Id. Thus, the Governor may require the assistance of the Director of State Finance and consequently the employees of OSF in the budget balancing process.
 Conflict Of Interest
¶ 43 Finally, you ask whether a conflict of interest exists when the State Treasurer provides information to the Board and also sits as a voting member of the Board. We noted previously that the State Treasurer sits on the Board by virtue of holding office as State Treasurer, and serves the Board in his or her capacity as State Treasurer. 2005 Okla. Sess. Laws ch. 428, § 1(B) (amending 74 O.S. Supp. 2004, § 10.3[74-10.3](B)); Okla. Const. art. X, § 21(A). As we concluded that it is a proper function of the State Treasurer to prepare financial information relevant to the Board's duty to certify revenues, there can be no per se conflict.
¶ 44 Additionally, neither the constitutional nor statutory provisions governing the Board contain an express conflict of interest prohibition for its members.[5] We therefore look to Okla. Const. art. X, § 11, the general constitutional provision which prohibits state officers from receiving an interest from the use of public funds. That section provides:
 The receiving, directly or indirectly, by any officer of the State, or of any county, city, or town, or member or officer of the Legislature, of any interest, profit, or perquisites, arising from the use or loan of public funds in his hands, or moneys to be raised through his agency for State, city, town, district, or county purposes shall be deemed a felony.
Id.
¶ 45 In considering a similar statute, the Arizona Court of Appeals noted that the object of conflict of interest statutes is to remove or limit the possibility of personal influence which might bear upon an official's decision. See Yetman v. Naumann,492 P.2d 1252, 1255 (Ariz.Ct.App. 1972). The Arizona court explained that the term "interest," in the context of a conflict of interest statute, refers to a "pecuniary or proprietary interest, by which a person will gain or lose something as contrasted to general sympathy, feeling or bias." Id.
¶ 46 Under Section 11 of Article X, the State Treasurer, as a state officer, would be prohibited from personally profiting from his or her position as a member of the Board.[6] The facts we have been presented do not show that the State Treasurer has an interest in presenting information to the Board other than in his or her capacity as custodian of the State's money. There is no hint of a pecuniary or proprietary interest. Thus, there is no legally recognized conflict of interest created by virtue of the State Treasurer providing financial information to the Board and sitting as a voting member.
¶ 47 Ultimately, whether circumstances may exist in an individual case which would create a conflict of interest is a question of fact, which is beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 48 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. It does not constitute a violation of the prohibition against dual office holding, 51 O.S. Supp. 2004, § 6, for a person to hold a position as Secretary of Finance and Revenue on the Governor's Cabinet and to be appointed to fill the unexpired term of the position of State Treasurer, as a cabinet Secretary does not meet the definition of an office.
 2. Title 62 O.S. 2001, § 41.7b, which requires agencies responsible for the collection of monies deposited to the credit of the General Revenue Fund and each of the Special Revenue Funds to provide financial information to the Director of State Finance, is not the exclusive means by which information may be supplied to the State Board of Equalization. The State Board of Equalization is not limited by the Oklahoma Constitution or by Oklahoma statutes in its consideration of information relevant to its duty to certify accrued revenues.
 3. The State Treasurer has, by virtue of being a voting member of the State Board of Equalization and by implication from the statutes granting the State Treasurer's powers, the authority to prepare information for consideration by the State Board of Equalization in performing its function of certifying state revenues. Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980).
 4. The State Treasurer has the authority to require the employees of the State Treasurer's Office to assist in the preparation of information to be supplied to the State Board of Equalization pursuant to 62 O.S. 2001, § 89.2(B) which allows the State Treasurer to fix the duties and compensation of employees.
 5. The State Treasurer has no authority to unilaterally require employees of the Office of State Finance to assist the State Treasurer in preparing financial information to be supplied to the State Board of Equalization, or to transfer employees from the Office of State Finance to the State Treasurer's Office. The State Treasurer may, however, seek the voluntary assistance of employees of the Office of State Finance in preparing financial information. The two agencies may also participate in the State Personnel Interchange Program, which provides for a temporary, voluntary exchange of employees by mutual consent of the two agencies. 74 O.S. 2001, §§ 840-3.9-840-3.14.
 6. There is no per se conflict of interest in the State Treasurer providing information to the State Board of Equalization and sitting as a voting member of that Board, as the State Treasurer is a member of the State Board of Equalization by virtue of his or her position as State Treasurer. Additionally, we have been presented no facts which would demonstrate that the State Treasurer receives any pecuniary or proprietary interest by serving on the Board in violation of Okla. Const. art. X, § 11. Whether circumstances exist in an individual case which would create a conflict of interest exists is a question of fact which is beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 SANDRA D. RINEHART Senior Assistant Attorney General
[1] The State Treasurer serves as Cabinet Secretary of Finance and Revenue. See 2005 Okla. Sess. Laws ch. 428, § 1(B) (amending 74 O.S. Supp. 2004, § 10.3[74-10.3](B)). Title 74 O.S. Supp.2004, § 10.3[74-10.3] was amended once more in the First Regular Session of the Fiftieth Legislature with an effective date of November 1, 2005. The amendment is not relevant to your inquiry. See
2005 Okla. Sess. Laws ch. 65, § 1.
[2] By statute, "[t]he cabinet secretaries appointed by the Governor [are also required to] review the annual Unified Regulatory Agenda published pursuant to the federal Executive Order No. 12875 and make appropriate comments and recommendations regarding proposed regulatory actions within their cabinet responsibilities to the Oklahoma Advisory Committee on Intergovernmental Relations." 74 O.S. 2001, § 485[74-485](B) (footnote omitted). The cabinet secretaries may also "make recommendations to said committee regarding federal regulatory actions that should be prepared using a negotiated rulemaking process." Id.
These duties do not involve the exercise of the State's sovereign power.
[3] At an election held July 22, 1975, the offices of State Auditor and State Examiner and Inspector were consolidated with an effective date of January 8, 1979. See State Question 510, S.J. Res. 37 (Okla. 1975).
[4] In 2005, the Legislature directed the Secretary of State to refer to the people for their approval or rejection a proposed amendment to Okla. Const. art. X, § 23 designed as State Question 708, Legislative Referendum 333. That proposed amendment expanded the allowable uses of the Constitutional Reserve Fund. The proposed amendment is not relevant to your inquiry.
[5] Compare 68 O.S. 2001, § 2861[68-2861](G) which contains a specific conflict of interest provision for a member of a county board of equalization.
[6] This provision would not apply to the position of Cabinet Secretary as it is not an office.